Argued and submitted December 3, 1984, reversed and remanded January 23, 1985

In the Matter of the Compensation of
Michael R. Harman, Claimant.

## HARMAN,
*Petitioner,*

*v.*

## STATE ACCIDENT INSURANCE FUND CORPORATION,
*Respondent.*

(82-02979 & 82-03232; CA A31630)

693 P2d 1366

Mike Stebbins, North Bend, argued the cause for petitioner. With him on the brief was Hayner, Waring, Stebbins & Coffey, North Bend.

Darrell E. Bewley, Appellate Counsel, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Donna Parton Garaventa, Assistant Attorney General, Salem.

Before Gillette, Presiding Judge, and Warren and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Claimant petitions for review of a Workers' Compensation Board order which awarded him 40.5 degrees for 35 percent loss of his left ankle but denied his claim for permanent total disability. We find that claimant meets the statutory criteria for permanent total disability and therefore reverse.

Claimant's first industrial injury came in the early 1970's when some metal fell on him while he was working in Nevada, injuring his back. He underwent two laminectomies and disc removals. He continued to have back pain, with four or five major flareups a year, but was otherwise able to control it adequately and work at fairly vigorous activities. Some of his work was apparently beyond what his Nevada physicians advised. His control of back pain decreased in recent years. As a result of his back condition he can now sit or stand for only short periods without change and can drive a car for only 45 minutes without a break. Claimant is in his mid-50's, has a high school education, was trained as a mechanic in the Army and has been a mechanic all his working life.

Claimant was injured again in July, 1979, while working for Pape Brothers in Coos Bay. While he was trying to pry a roller frame on a caterpillar tractor track, he slipped and fell backwards, landing on his ankle and breaking it. The break healed satisfactorily, but the joint was permanently damaged and became arthritic as a result of the injury. Claimant now uses a special ankle brace and is severely limited in his ability to walk, particularly any distance.

Because of claimant's limitations, he was unable to return to his former position as a mechanic with Pape. Instead, Pape created a special job for him, a combination of bench repairman, tool room superintendent and parts runner. Pape built a tool room/work station for claimant at a cost of almost $10,000, which the Workers' Compensation Department paid. The work station required a special chair, which allowed claimant to stand up or sit down as necessary. Pape hired him for the position under a Workers' Compensation Department wage subsidy plan. The Department paid a declining percentage of claimant's first year wages. His treating physician's opinion was that claimant was unable to do any work beyond that required for this specific job. Claimant

worked for about 11 months. Pape then laid him off for economic reasons. Several months later, while he was still laid off, Pape terminated him, because it had received garnishments against him in violation of its garnishment policy.[1]

Claimant received unemployment benefits for a year after his layoff, continuing until a week before the hearing in this case. During that time he sought work in the parts departments of a number of businesses. At most of the places where he inquired he was not allowed to fill out a formal application; at all places he was told that there was no work available. It is not clear from his testimony whether the businesses had no parts work available at all or whether they had no work claimant could do, given his physical limitations. It is highly unlikely that claimant could physically perform a typical parts job in light of his restrictions on bending at the waist, lifting, walking and standing for extended periods.

ORS 656.206(1)(a) provides:

> " 'Permanent total disability' means the loss, including preexisting disability, of use or function of any scheduled or unscheduled portion of the body which permanently incapacitates the worker from regularly performing work at a gainful and suitable occupation. As used in this section, a suitable occupation is one which the worker has the ability and the training or experience to perform, or an occupation which the worker is able to perform after rehabilitation."

Claimant is permanently totally disabled under this definition. He was able to work, despite his recurring back pain, before his ankle injury largely as a result of his strong motivation. After the injury he was able to work only because his continuing strong motivation was combined with a job and a work station carefully (and especially) tailored to his specific physical needs and because there was state money available to pay for that work station and to underwrite his wages.

Claimant's vocational counsellor stated that, had it not been for that special job, claimant would have been

---

[1] ORS 23.185(5) provides:

"No employer shall discharge any person for the reason that the person has had earnings garnished."

The parties could not raise any issue in this proceeding about the propriety of the discharge.

virtually unemployable without extensive retraining. She believed that, even then, his age would have made it very difficult to find another employer willing to hire him. Claimant is ineligible for further retraining or subsidized employment because of what he received while with Papé His condition is the result of the progression of his Nevada-compensable back injury, the permanent ankle loss due to his Oregon-compensable ankle injury, the limitation of his previous training and experience to jobs which he is no longer physically able to perform and the lack of other jobs which he could physically perform. There is no "suitable occupation" available. He is permanently and totally disabled.

Reversed and remanded with instructions to award permanent total disability.