George Archie **HARDMAN**, Plaintiff,

v.

**SALT LAKE CITY FLEET MANAGEMENT and Second Injury Fund, Defendants.**

No. 20133.

Supreme Court of Utah.

Sept. 8, 1986.

Ann L. Wassermann, Salt Lake City, for plaintiff.

Ray L. Montgomery, Asst. City Atty., Salt Lake City, for the City.

Lena Hunsaker, Salt Lake City, for Risk Management.

Gilbert Martinez, Salt Lake City, for Second Injury Fund.

HOWE, Justice:

Plaintiff George Archie Hardman seeks review of an order of the Industrial Commission denying him permanent total disability benefits for an industrial injury.

On October 1, 1981, while plaintiff was employed by defendant Salt Lake City, he suffered a fractured skull when a steel beam fell and struck him on the head. He spent nine days in the hospital, and an operation was performed on his skull to relieve the pressure on his brain. Subsequently, several evaluations were made of his physical and emotional condition. His attorney asked the Industrial Commission to make a finding of tentative permanent total disability by taking into consideration factors additional to Hardman's physical impairment, such as his age and lack of education or skills. After a hearing on October 5, 1983, the administrative law judge submitted the matter to a medical panel consisting of a neurologist and a psychiatrist. The panel was asked to assess the extent of Hardman's disability and determine whether there was a causal connection between the injury he sustained and the disability he then claimed. The panel found that Hardman had been temporarily totally disabled from October 1, 1981, until July 1, 1982, and that he had a permanent physical impairment totalling twenty-five percent, broken down as follows: fifteen percent for neuropsychiatric syndrome of post-concussion type, five percent for the earlier amputation of the left second finger, and five percent for persistent intermittent and unexplained pain in the left shoulder.[1] The administrative law judge found that the City had paid $18,351.43 in temporary total disability compensation to Hardman from October 2, 1981, to April 15,

---

1. Evidence about the likelihood of plaintiff having had a previous heart condition was offered, although this was not a consideration in the Commission's findings.

1983, in addition to the payment of medical bills totalling $7,081.12. The judge determined that because Hardman's temporary total disability ended July 1, 1982, he had been overpaid by the City for temporary total disability from July 1, 1982, to April 15, 1983, in the sum of $9,177.44. Applying that overpayment to Hardman's permanent partial disability entitlement which was awarded him, the City owed him a balance of $959.44, which it subsequently paid.

Our standard of review of the Industrial Commission's findings of fact in workmen's compensation cases is well-settled. We are limited to determining whether the Commissions's findings are supported by substantial evidence. *Higgins v. Industrial Commission of Utah,* 700 P.2d 704, 706 (Utah 1985); *Kennecott Corp. v. Industrial Commission,* 675 P.2d 1187, 1192 (Utah 1983); *Kaiser Steel Corp. v. Monfredi,* 631 P.2d 888, 890 (Utah 1981); *Kent v. Industrial Commission,* 89 Utah 381, 385, 57 P.2d 724, 725 (1936).

Plaintiff contends that he met his burden of proof and presented a prima facie case of tentative permanent total disability to the Commission. The Workers' Compensation Act establishes a procedure by which a finding of permanent total disability may be determined. U.C.A., 1953, § 35–1–67,[2] provides in pertinent part:

A finding by the commission of permanent total disability shall in all cases be tentative and not final until such time as the following proceedings have been had: If the employee has tentatively been found to be permanently and totally disabled, it shall be mandatory that the industrial commission of Utah refer the employee to the division of vocational rehabilitation under the state board of education for rehabilitation training....

The Act does not set forth, however, those often unquantifiable factors that establish permanent total disability, even on a tentative basis. We are therefore compelled to examine the law as it has evolved within the framework of our cases. This Court has stated, with regard to permanent total disability claims, that a worker may be found totally disabled if he can no longer perform work of the general nature he was performing when injured, or "any other work which a man of his capabilities may be able to do," or to learn to do or for which he might be trained. *United Park City Mines Co. v. Prescott,* 15 Utah 2d 410, 412, 393 P.2d 800, 801–02 (1964).

The record and the transcript are replete with statements from qualified medical personnel to the effect that plaintiff would most likely be unable to return to similar work. The neurosurgeon who treated him rated his permanent partial disability at twenty-seven percent. In fact, his own doctor stated that statistically approximately one-third of the persons who experience significant head injuries continue to have disabilities, mainly headaches and dizziness, which prevent them from returning to work. Dr. Moench, a psychiatrist who examined the plaintiff, expressed doubts that he could ever "return to his previous level of employment." At the hearing, plaintiff testified that he continued to suffer from severe headaches and episodes of light-headedness, dizzy spells, and pain in his left shoulder. Plaintiff, a man in his late fifties, also testified that he had only a sixth-grade education and had been a manual laborer most of his life.

The medical panel's psychiatric examiner diagnosed plaintiff as suffering from an accident-caused "post-concussion syndrome which is characterized by impairment of memory, problems of coordination [and] emotional disturbances." The panel's rating of his disability, however, reflected only his physical impairment. It did not take into consideration the extent to which his physical impairment, compounded by other factors, could render him totally disabled.

---

2. Although the section has been subsequently amended, this language has remained substantially unchanged.

■ The Commission, by adopting the findings of the medical panel as its own, failed to carry out its task. It appears to have confused the percentage of *impairment*, a determination which the medical panel is qualified to make, with the percentage of *disability*, including factors *in addition* to the physical impairment, which it is the Commission's duty to determine. In workmen's compensation law, the *disability* is the worker's impairment of earning capacity. *Northwest Carriers, Inc. v. Industrial Commission of Utah*, 639 P.2d 138 (Utah 1981). The Commission's findings failed to acknowledge the odd-lot doctrine accepted in most jurisdictions and which has been repeatedly approved by this Court. That doctrine recognizes the substantial difference between physical impairment and disability. For example, a low percentage of physical impairment is not *per se* less than total permanent disability. Numerous other courts applying the odd-lot doctrine have found permanent total disability despite a deceptively low percentage of physical impairment. *See, e.g., Halstead Industries v. Jones*, 603 S.W.2d 456 (Ark.1980) (permanent total disability awarded with fifteen percent physical impairment); and *Employers Mutual Liability Insurance Co. of Wisconsin v. Industrial Commission*, 25 Ariz.App. 117, 541 P.2d 580 (1975) (physical functional disability of fifteen percent).

The odd-lot doctrine further requires an evaluation of disability in terms of the specific individual who has suffered a work-related injury. For example, in *Northwest Carriers, Inc. v. Industrial Commission of Utah, supra*, we endorsed the doctrine and articulated specific concerns which must be considered in evaluating an individual's disability. We there stated:

> *Factors extrinsic to an industrial injury, such as age, mental abilities, prior training, and job market, are appropriate factors in determining an injured employee's earning power and degree of disability....* [T]his Court has previ-

ously relied on one or more of these factors in determining the degree of disability.

*Id.* at 141 (citations omitted; emphasis added). In *Northwest Carriers*, the Commission found that both workers were permanently and totally disabled because of factors which comprised the odd-lot doctrine. Those employees, although not totally incapable of performing some work, were not capable of adapting to a new employment situation. This inability to adapt may be exacerbated by lack of mental capacity and education. In his treatise, Professor Larson defines an employee in the odd-lot category as one "who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist." 2 A. Larson, *Workmen's Compensation Law* § 57.51, at 10–164.22 (1975) (citation omitted).

In *Northwest Carriers*, we applied the odd-lot doctrine and found that the advanced age of the employees, their lack of formal education, and their limited training and skills, *in addition* to the physical impairment, were all factors contributing to their disability. More recently, we applied it in *Marshall v. Industrial Commission*, 681 P.2d 208 (Utah 1984).[3] There, Nolan Marshall was denied permanent total disability benefits after a work-related accident. He was sixty-seven years old, had worked forty years at heavy labor in the mines, and had less than a high school education. Marshall was a likely candidate for the odd-lot category.

With regard to total disability claims, we noted in *Marshall*:

> Disability is evaluated not in the abstract, but in terms of the specific individual who has suffered a work-related injury. An injury to a hand would not cause the same degree of disability in a teacher for example as it would in an

---

**3.** On remand, plaintiff was awarded permanent total disability benefits and appealed seeking interest on the award for past due benefits. *See*

*Marshall v. Industrial Commission*, 704 P.2d 581 (Utah 1985).

electrician. Thus, in assessing the lack of learning capacity, a constellation of factors must be considered, only one of which is the physical impairment. Other factors are age, education, training and mental capacity. *See Northwest Carriers v. Industrial Commission, supra,* at 141; *Morrison-Knudsen Construction Co. v. Industrial Commission,* 18 Utah 2d 390, 424 P.2d 138 (1967). It is the unique configuration of these factors that together will determine the impact of the impairment on the individual's earning capacity.

*Id.* at 211.

We also stated that:

[O]nce the employee has presented evidence that he can no longer perform the duties required in his occupation, and that he cannot be rehabilitated, the burden shifts to the employer to prove the existence of regular, steady work that the employee can perform, taking into account the employee's education, mental capacity and age.

*Id.* at 212 (citation omitted).

■ By that three-step process, we did not mean that the employee must prove on his own that he is unable to be rehabilitated. Such a requirement would place the employee in the untenable position of assessing his own potential for rehabilitation. In order for an accurate assessment of his rehabilitation potential to be made, section 35–1–67 requires the Commission to draw upon the expertise of the Division of Vocational Rehabilitation. Once the employee has been referred there upon the Commission's tentative finding of permanent total disability, the burden is then on the employee through his cooperation with the Division to establish that he cannot be rehabilitated. If that is done, the Division then certifies to the Commission that it has received the employee's full cooperation in its efforts to rehabilitate him, and that in its opinion, he cannot be rehabilitated. It is at this time that the burden shifts to the employer to prove the "existence of regular, steady work that the employee can perform," taking into account the plain-

tiff's education, mental capacity, and age. *Marshall, supra,* at 212. *See also Lyons v. Industrial Special Indemnity Fund,* 98 Idaho 403, 565 P.2d 1360 (1977); *Employers Mutual Life Insurance Co. v. Industrial Commission, supra; Hill v. U.S. Plywood-Champion Co.,* 12 Or.App. 1, 503 P.2d 728 (1972); *Brown v. Safeway Stores, Inc.,* 82 N.M. 424, 483 P.2d 305 (1970); *Transport Indemnity Co. v. Industrial Accident Commission,* 157 Cal.App.2d 542, 321 P.2d 21 (1958); 2 A. Larson, *The Law of Workmen's Compensation* § 57.51 (1976). Despite the City's contentions that it offered various jobs to plaintiff, the record is devoid of any concrete evidence that he was offered work of the general nature he had been performing.

■ The administrative law judge's substitution of his judgment for the evaluation of the Division of Vocational Rehabilitation was clearly error. Despite the findings of the medical panel and despite his own findings that plaintiff suffered from "continuous headaches, dizziness, [feeling] sick, and occasionally [passing] out," all symptoms that would diminish one's ability to perform most any work, he still recommended that plaintiff look for "jobs such as service station attendant [or] motel manager." It is not enough in such a case to allege that work is available; it must be shown that there is regular, dependable work available for the plaintiff, without the expectation that he will rely on the sympathy of friends or his own "superhuman efforts." *Marshall v. Industrial Commission,* 681 P.2d at 212. This work must be such that he can perform it or be trained to so do. *See, e.g., Lyons v. Industrial Special Indemnity Fund, supra.*

At almost the age of sixty, with a limited education and an even more limited work background, plaintiff is not likely to enter a new area of the work force. Absent proof of employment reasonably available to one in the odd-lot category, the injured employee should be classified as totally disabled. *Employers Mutual Liability Insurance Co. v. Industrial Commission,* 541 P.2d at 583.

■ Therefore, we hold that plaintiff presented a prima facie case of tentative permanent total disability to the Commission. We remand the case to the Commission for additional proceedings consistent with this opinion, including (1) referral to the Division of Vocational Rehabilitation for a determination of whether plaintiff can be rehabilitated, and (2) the taking of further medical evidence relating to plaintiff's heart condition and the extent to which it may affect his disability, as well as any other medical evidence deemed necessary by the Commission to update plaintiff's condition.

HALL, C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.