**Bruce D. NORTON, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION OF the STATE OF UTAH, United States Steel Corporation, [Self-insured Employer], and the Second Injury Fund of the State of Utah, Defendants.**

No. 21017.

Supreme Court of Utah.

Nov. 25, 1986.

Virginius Dabney, Salt Lake City, for plaintiff.

David L. Wilkinson, Atty. Gen., Salt Lake City, for Indus. Com'n.

Erie V. Boorman, Salt Lake City, for Second Injury.

Phil N. Walker, San Francisco, Cal., for U.S. Steel.

PER CURIAM:

In this petition for review, petitioner Bruce D. Norton challenges the decision of the Industrial Commission denying his claim for permanent total disability. Norton contends that the Commission erroneously based its findings on medical impairment alone without examining his earning capacity, ignored his total disability under the "odd-lot" doctrine, and ruled contrary to the evidence produced by him in support of his claim. None of the defendant parties has filed a response. We reverse and remand for a hearing consistent with this opinion.

Norton was employed as a coal miner of United States Steel in East Carbon, Utah, for thirty-nine years of his life. He was sixteen years old when he began working full-time in 1943 and fifty-six when he stopped working in 1983. He earned a living throughout those years by dint of his brawn, performing arduous physical labor that required little, if any, skills. Norton's literacy is marginal at best.

On August 10, 1977, Norton sustained an injury to his neck and shoulder when a pulley malfunctioned and sent a heavy cable crashing down on his neck with such force that his face was embedded in the coal and he had to be pried out from under the cable by his companions. Initial diagnosis was contusion over base of neck, no fracture. Norton returned to work after one week wearing a soft collar. Because of persistent pain, he was given a myelogram in December which showed a herniated disc at C5–C6 interspace and right shoulder traumatic bursitis. Moderate irritation of the right C6–C7 nerve roots was found as well. Traction and heat were prescribed as conservative treatment, with a possibility of surgery indicated. Norton continued to suffer persistent headaches and neck pain which have worsened with time, apparently symptoms of residual spondylosis and spurring. His company physician advised him that the day would come when he would want to have surgery. Norton was reluctant to take that step and

informed his supervisor that inasmuch as he had elected not to have surgery, he should also take himself off compensation and return to work.

Throughout his remaining working years, Norton intermittently underwent traction and physical therapy, wore a back brace, and took pain medication. During the last eighteen months of his work his legs felt numb whenever he turned slightly, and at one point he experienced a fifteen to twenty minute paralysis of his left lower extremity. His left-hand grip and strength of the left arm continued to decrease to a point where he would drop objects and frequently lose feelings in his fingers at night. Nonetheless, he worked until March of 1983 when he took a medical retirement.

Norton's prior injuries included a broken back when he was thirteen years old, resulting in lumbar spine degenerative joint disease, right ankle traumatic arthritis stemming from a broken ankle, bilateral inguinal hernia for which he has been in surgery three times, hyperacidity with history of duodenal ulcer and focal skin cancers. Impairments developed after the industrial injury include tendovaginitis of the right little finger, pulmonary allergic bronchitis, and hypertensive cardiovascular disease with cardiomyopathy aggravated by life-long obesity.

Norton was pronounced ineligible for rehabilitation by the Division of Vocational Rehabilitation before the Commission rendered its final decision.

Basing his findings of facts and conclusions of law partially upon the report of a medical panel, and partially upon the report of Norton's own physicians, the administrative law judge found a 14% whole man impairment attributable to pre-existing conditions, a 10% uncombined permanent physical impairment as a result of the industrial accident, raising the overall impairment to 23% of the whole man, and a 31% impairment as a result of all causes that developed subsequent to the industrial accident.[1]

---

1. Norton's challenge to the percentages found    by the medical panel and adopted by the admin-

The administrative law judge then concluded that this impairment construed in a light most favorable to Norton did not require a finding of permanent total disability. The administrative law judge noted the impairments that followed the industrial accident, stressed the fact that Norton continued to work for six more years after the accident, concluded that the evidence clearly did not warrant a determination that Norton was permanently and totally disabled as a consequence of his industrial accident and therefore denied that claim. Nowhere in the findings, conclusions and order, or in the affirmance of that order by the Board of Review is there any mention about Norton's eligibility for rehabilitation. No findings were made on Norton's earning capacity in his field of endeavor or elsewhere. It is this lack of findings that mandates a reversal and remand for further proceedings.

Under our well-settled standard of review, we are limited to determining whether the Commission's findings are supported by substantial evidence. *Hardman v. Salt Lake City Fleet Management*, Utah, 725 P.2d 1323 (1986) (citations omitted). But where the findings of fact do not support the award, this Court may set aside the Commission's award. U.C.A., 1953, § 35–1–84(2).

█ As in *Hardman, supra*, where it confused the percentage of impairment, a medical finding, with the percentage of disability, an administrative evaluation of earning capacity, the Commission again failed in this case to carry out its task. It adopted with slight modification the findings of *impairment* reported by the medical panel but then failed in its administrative responsibility and function to evaluate Norton's permanent *disability* which should have included such factors as Norton's "present and future ability to engage in gainful activity as it is affected by such diverse factors as age, sex, education, economic and social environment, in addition to the definite medical factor—permanent impairment." [2] As this Court has stated in *Marshall v. Industrial Commission*, 681 P.2d 208, 211 (Utah 1984):

This ability is evaluated not in the abstract, but in terms of the specific individual who has suffered a work related injury.... [I]n assessing the lack of earning capacity, a constellation of factors must be considered, only one of which is the physical impairment. Other factors are age, education, training and mental capacities. [Citations omitted.] It is the unique configuration of these factors that together will determine the impact of the impairment on the individual's earning capacity.

*Accord Hardman* at 1326–1327. No mention is made of those other factors here, in spite of the fact that the Commission had before it the evaluation of the Division of Vocational Rehabilitation that spells out Norton's vocational history, educational limitations, learning disability and age "in concert with his multiple disabling conditions and a need for total re-education." That evaluation presents prima facie evidence that Norton, while not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market, *Marshall* at 212, and therefore falls into the so-called "odd-lot" category. *Hardman* at 1327.

█ With respect to the administrative law judge's finding that Norton's continued work for six years was proof that he was not permanently totally disabled in 1983, it should be pointed out that that fact standing alone does not foreclose Norton's claim. The administrative law judge correctly considered Norton's return to work as one factor to be weighed in determining his disability. He erred when he failed to con-

---

istrative law judge must be rejected. The rating is proper under the formula explained in *Second Injury Fund v. Perry's Mill and Cabinet Shop*, 684 P.2d 1269 (Utah 1984), and *Jacobsen Construction v. Hair*, 667 P.2d 25 (Utah 1983).

2. See the Commission's own explanation of the difference between impairment and disability in *Northwest Carriers Inc. v. Industrial Commission*, 639 P.2d 138, 140, n. 3 (Utah 1981).

sider the *condition* under which Norton continued his employment, as manifested by his finding "the very fact that the applicant continued to work in underground mining for six years following his accident is convincing evidence that his accident did not render him permanently and totally disabled." Norton's decision to return to work did not automatically disqualify him from receiving permanent total disability benefits, where the facts indicate that throughout the remainder of his employ he was not restored to health. The evidence is undisputed that Norton spent the last six of his working years in considerable pain. Provided that a worker's disability was also analyzed within the framework of the odd-lot doctrine, case law dealing with the factor of substantial pain has generally held that "[a] worker who cannot return to any gainful employment without suffering substantial pain is entitled to compensation benefits for total disability." *Comeaux v. Cameron Offshore Services, Inc.*, 420 So.2d 1209 (La.App.1982).

> The presence of substantial pain may logically cause an injured worker to fall into this odd-lot category, inasmuch as it directly affects the probable dependability with which the injured worker can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary luck, or the superhuman efforts of the claimant to rise above his crippling handicaps.

*Calogero v. City of New Orleans*, 397 So.2d 1252, 1254 (La.1980), modified 434 So.2d 177 (La.App.1983) (benefits affirmed on substantial pain theory alone), *citing* L.A. Larson, *The Law of Workman's Compensation* § 10–164.49 (1980). The probability of future impairment of future earning capacity as indicated by the nature of the injury, the age of the worker, and other relevant factors must likewise be assessed. *Island Creek Coal Co. v. Taylor*, 468 S.W.2d 318 (Ky.1971). *See also Harwell v. Argonaut Insurance Co.*, 296 Or. 505, 678 P.2d 1202 (1984); *Tsuchiyama v. Kahului Trucking and Storage, Inc.*, 2 Hawaii App. 659, 638 P.2d 1381 (1982); *Smith v. Indus-trial Commission*, 113 Ariz. 304, 552 P.2d 1198 (1976). Only where the employee returns to work under normal conditions will the presumption of no loss of earning capacity stay unassailed. *Midland-Ross Corp. v. Industrial Commission*, 107 Ariz. 311, 486 P.2d 793 (1971).

> It may be years before the effect is felt. But a man with a stiffened arm or damaged back or badly weakened eye will presumably have a harder time doing his work well and meeting the competition of young and healthy men. When a man stands before the worker's compensation court with proven permanent physical injuries, for which the exclusive remedy has abolished all possibility of common law damages, it is not justifiable to tell him he has undergone no impairment of earning capacity, solely on the strength of current paychecks.

*Cleveland v. Cyprus Industrial Minerals*, 196 Mont. 15, 636 P.2d 1386 (1981), *citing Fermo v. Superline Products*, 175 Mont. 345, 574 P.2d 251 (1978). It need not be restated at great length that the Workmen's Compensation Act is to be liberally construed and that any doubt with respect to the right of compensation will be resolved in favor of the injured employee. *State Tax Commission v. Industrial Commission*, 685 P.2d 1051 (Utah 1984); *McPhie v. Industrial Commission*, 567 P.2d 153 (Utah 1977).

Upon remand the Commission is required to address Norton's *disability* in light of all factors mentioned *ante*, and the burden will be on the employer to prove the existence of regular, steady work that Norton could perform, taking into account his age, limited education, and functional illiteracy, as well as his disabling pain. Contrary to the Commission's disclaimer noted in *Northwest Carriers* at 140, n. 3, permanent *impairment* alone is never the sole or real criterion of permanent *disability*, and a denial of permanent total disability based on it alone invites reversal under well-settled stare decisis.

The matter is remanded for further proceedings consistent with this opinion.