Robert SMITH, Petitioner,

v.

MITY LITE, Workers' Compensation Fund of Utah, Employers' Reinsurance Fund, and Industrial Commission of Utah, Respondents.

No. 960441–CA.

Court of Appeals of Utah.

June 5, 1997.

Sherlynn White Fenstermaker and David N. Mortensen, Ivie & Young, Provo, for Petitioner.

Gerald J. Lallatin and Sandra N. Dredge, Dredge & Lallatin, L.L.C., Provo, for Respondents Mity Lite and Workers' Compensation Fund.

Erie V. Boorman, Jr., Employers' Reinsurance Fund, Salt Lake City, for Respondent Employers' Reinsurance Fund.

Alan L. Hennebold, Salt Lake City, for Respondent Industrial Commission.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Petitioner Robert Smith seeks review of an Industrial Commission order denying him permanent total disability workers' compensation benefits for an industrial accident. We reverse and remand for further proceedings.

## BACKGROUND

On May 23, 1990, while Smith was employed by respondent Mity Lite, he injured his back when he lifted a heavy pallet. Subsequently, Smith consulted and was examined by four different physicians. All four physicians recommended some form of physical therapy, physical conditioning, and weight loss, rather than surgery, to treat his back pain.

On January 11, 1991, Smith consulted a fifth doctor, Dr. James Adams, a neurosurgeon, who recommended and performed spinal surgery in May 1991, and two follow-up surgeries in May and August 1992. In spite of Smith's medical treatments, he has experienced chronic pain since the industrial accident and finds it necessary to treat the pain every few hours with morphine prescribed by Dr. Adams. Smith says he is unable to sit for an extended time period and his ability to walk is limited.

Prior to the accident, Smith had always worked as a general laborer, working such jobs as construction, custodial, and ditch digging. Smith's formal education ended after the fifth grade, and he lacks the ability to read well.

Since the industrial accident, Smith has been unemployed. The Social Security Administration granted Smith Social Security Disability benefits as of the accident date based on its finding that he has been unable to work due to a herniated disc with peridural adhesions.

Smith filed a claim with the Commission under section 35–1–67 of the Utah Code for permanent total disability benefits. Because there were conflicting medical reports, the administrative law judge (ALJ) appointed a medical panel to consider Smith's claims as required by Rule 568–1–9 of the Utah Administrative Code. The medical panel consisted of an orthopedist and a neurologist. The panel also had a psychiatrist evaluate Smith. The medical panel found that Smith had a thirteen percent impairment of his lower back, eight and seven-tenths percent of which was attributable to the industrial accident. The panel also found a seven percent whole person impairment for a preexisting shoulder injury, which, because of the severity of his back injury, was not a restrictive factor, and a five percent impairment for his psychiatric conditions.

The ALJ found that although Smith's treating physician, Dr. Adams, gave Smith a 100% disability rating, Dr. Adams's report was not prepared in accordance with the 4th edition of the *AMA Guides to the Evaluation of Permanent Impairment* as modified, and thus, could not be considered because it provided "very little objective information." The ALJ concluded that Smith was not per-

manently and totally disabled as a result of the May 23, 1990 industrial accident because Smith had failed to meet his burden of proof by a preponderance of the evidence. The ALJ ordered that Smith receive $19,454 for temporary total disability compensation from May 23, 1990 through October 1, 1992, less any workers' compensation already paid for this period, in addition to all medical expenses incurred as a result of the industrial accident. The ALJ further ordered that Smith receive permanent partial disability of eight and seven-tenths percent of the whole person for a total of $6432.18, less any amount already paid for permanent partial disability.

Smith then appealed the ALJ's denial of his claim for permanent total disability compensation to the Commission. The Commission adopted the medical panel's report and concluded that Smith "failed to establish by a preponderance of the evidence that his industrial accident is the medical cause of his now claimed permanent total disability." While the Commission recognized that Smith's back impairment was "not inconsequential," it determined that "the medical panel and other physicians who have examined Mr. Smith find a consistent pattern of nonindustrial depression, somatoform pain disorder, opiate dependency, personality disorder and depression which are diagnosed as the cause of his inability to return to work." The Commission specifically adopted the medical panel's conclusion "that with adequate conditioning, Mr. Smith can perform light duty work."

Smith filed a Motion for Reconsideration, which the Commission denied. Smith now seeks review of the Commission's decision denying him permanent total disability benefits.

## ISSUE AND STANDARD OF REVIEW

Smith asserts he established a prima facie case of permanent total disability, thereby requiring the Commission to follow the appropriate procedural requirements before it determines his entitlement to permanent total disability benefits.

■ We will affirm the Commission's findings only if they are "supported by sub-

stantial evidence when viewed in light of the whole record before the court." Utah Code Ann. § 63–46b–16(4)(g) (1993). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. In applying the substantial evidence test, we review the whole record before the court...." *Grace Drilling Co. v. Board of Review,* 776 P.2d 63, 68 (Utah Ct.App.1989) (citations & quotation marks omitted). "When an agency has discretion to apply its factual findings to the law, we will not disturb the agency's application unless its determination exceeds the bounds of reasonableness and rationality." *VanLeeuwen v. Industrial Comm'n,* 901 P.2d 281, 283 (Utah Ct.App.1995) (citations & quotation marks omitted).

## ANALYSIS

■ Smith argues that the Commission's findings of fact—that Smith had incurred a significant permanent back impairment by virtue of the industrial accident and that he was unable to return to his prior work as a general laborer because of such impairment—establish that there was, in fact, medical causation, and therefore he met his burden of proof and presented a prima facie case of permanent total disability to the Commission. Smith further argues that the Commission erred in not applying the sequential decision-making process set forth in section 35-1-67 of the Utah Code and the odd lot doctrine, in determining that he was ineligible for permanent total disability benefits.

The Commission counters that its finding—that Smith failed to meet his burden of proving medical causation—is supported by the evidence, including the medical panel's report, the ALJ's Findings of Fact, and other medical records. Additionally, the Commission argues that because Smith failed to establish medical causation, it need not and indeed should not have addressed either the sequential decision-making process or the odd lot doctrine in making its determination of Smith's disability.

■ The Workers' Compensation Act provides, in pertinent part: "Each employee ... who is injured ... by accident arising

out of and in the course of his employment ... shall be paid compensation for loss sustained on account of the injury." Utah Code Ann. § 35–1–45 (1988) (amended).[1] Accordingly, a claimant must satisfy two prerequisites to receive compensation for an injury: "First, the injury must be 'by accident.' Second, ... there [must] be a causal connection between the injury and the employment." *Allen v. Industrial Comm'n,* 729 P.2d 15, 18 (Utah 1986). In this case, it is undisputed that Smith's injury occurred "by accident" and that there was legal causation. Only medical causation is at issue in this case.

In *Allen,* the supreme court outlined the test for medical causation: "To prove medical causation, a claimant must introduce evidence to show 'the disability is medically the result of an exertion or injury that occurred during a work-related activity.'" *Ortiz v. Industrial Comm'n,* 766 P.2d 1092, 1094 (Utah Ct.App.1989) (quoting *Allen,* 729 P.2d at 27). "'In the event the claimant cannot show a medical causal connection, compensation should be denied.'" *Id.* at 1094–95 (quoting *Allen,* 729 P.2d at 27). Furthermore, "[t]he standard of proof for causation is by a preponderance of the evidence." *Large v. Industrial Comm'n,* 758 P.2d 954, 956 (Utah Ct.App.1988).

Section 35–1–67 of the Utah Code outlines a procedure which the Commission must follow to determine permanent total disability. This section provides, in pertinent part:

A finding by the commission of permanent total disability shall in all cases be tentative and not final until all of the following proceedings have occurred:

(a) Upon tentatively determining that an employee is permanently and totally disabled, the commission shall ... refer the employee to the vocational rehabilitation agency under the State Board of Education for rehabilitation training....

(b) If the vocational rehabilitation agency under the State Board of Education certifies to the commission in writing that the employee has fully cooperated with

that agency in its efforts to rehabilitate the employee, and in the opinion of the agency, the employee is not able to be rehabilitated, the commission shall ... hold a hearing to consider the agency's opinion as well as other evidence regarding rehabilitation.... An employee is not entitled to compensation, unless the employee fully cooperates with any rehabilitation effort under this section.

Utah Code Ann. § 35–1–67(5) (1988) (amended). In *Hardman v. Salt Lake City Fleet Management,* 725 P.2d 1323 (Utah 1986), the supreme court recognized that this section "does not set forth ... those often unquantifiable factors that establish permanent total disability, even on a tentative basis." *Id.* at 1325 (holding employee had established prima facie case of tentative permanent total disability before Commission). Accordingly, in reviewing whether an employee had, in fact, met his burden of proof, the *Hardman* court examined prior Utah case law. *See id.* at 1326–27. The court concluded, "that a worker may be found totally [permanently] disabled if he can no longer perform work of the general nature he was performing when injured, or 'any other work which a man of his capabilities may be able to do,' or to learn to do or for which he might be trained." *Id.* at 1325 (quoting *United Park City Mines Co. v. Prescott,* 15 Utah 2d 410, 393 P.2d 800, 801–02 (1964)); *see also Entwistle Co. v. Wilkins,* 626 P.2d 495, 498 (Utah 1981) (stating "total disability" does not mean "that the injured employee must be unable to do any work at all"; rather, an employee's disability may be "total if he can no longer perform the duties of the character required in his occupation prior to his injury.").

In *Hardman,* the court determined that the Commission had erred in relying solely on the medical panel's report of impairment and in failing to make any findings of fact regarding the employee's claimed disability. *Hardman,* 725 P.2d at 1326. The *Hardman* court explained that

The Commission, by adopting the findings of the medical panel as its own, failed to

---

1. All citations to the Utah Code are those provisions which were in effect at the time of the initial injury. "In workers' compensation cases, we generally apply the law existing at the time of injury." *Wicat Systems v. Pellegrini,* 771 P.2d 686, 687 (Utah Ct.App.1989).

carry out its task. It appears to have confused the percentage of *impairment,* a determination which the medical panel is qualified to make, with the percentage of *disability,* including factors *in addition* to the physical impairment, which it is the Commission's duty to determine. In workmen's compensation law, the *disability* is the worker's impairment of earning capacity.

*Id.* The court noted that the medical panel's rating of the employee's disability reflected only his physical impairment and that the Commission "did not take into consideration the extent to which his physical impairment, compounded by other factors, could render him totally disabled," *id.* at 1325, i.e., the employee's inability to return to his previous employment, and his advanced age, limited education, and lack of marketable job skills. *Id.* at 1327. The court noted that the Commission had failed to acknowledge the odd lot doctrine, which "recognizes the substantial difference between physical impairment and disability. For example, a low percentage of physical impairment is not *per se* less than total permanent disability." *Id.* at 1326; *see also Hoskings v. Industrial Comm'n,* 918 P.2d 150, 154 (Utah Ct.App.) ("Under the 'odd lot' doctrine, the Commission may find permanent total disability when a relatively small percentage of impairment caused by an industrial accident is combined with other factors to render the claimant unable to obtain suitable employment." (footnote omitted)), *cert. denied,* 925 P.2d 963 (Utah 1996); *see generally* 1C Arthur Larson & Lex K. Larson, Workmen's Compensation Law § 57.51(a), at 10–286 (1996) (defining employee in odd lot category as one " 'who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled.' " (citation & footnote omitted)).

In deciding there was medical causation and in applying the odd lot doctrine, the *Hardman* court relied on its earlier decision in *Marshall v. Industrial Commission,* 681 P.2d 208 (Utah 1984). In *Marshall,* the Commission denied permanent total disability benefits to an employee based almost entirely on the employee's percentage of impairment and the fact that the employee was eligible to retire, rather than evidence of wage-earning capacity. The *Marshall* court held that the Commission's denial was unsupported by the Commission's findings of fact, and that reliance on the percentage of impairment was unsupportable under the odd lot doctrine. *See* 681 P.2d at 213. The *Marshall* court stated that with respect to permanent total disability claims:

> Disability is evaluated not in the abstract, but in terms of the specific individual who has suffered a work-related injury. An injury to a hand would not cause the same degree of disability in a teacher, for example, as it would in an electrician. Thus, in assessing the loss of earning capacity, a constellation of factors must be considered, only one of which is the physical impairment. Other factors are age, education, training and mental capacity. It is the unique configuration of these factors that together will determine the impact of the impairment on the individual's earning capacity.

*Id.* at 211 (citations omitted).[2]

Additionally, in *Norton v. Industrial Commission,* 728 P.2d 1025 (Utah 1986) (per curiam), the supreme court held that the Commission's finding that a worker was not permanently totally disabled was not supported by sufficient evidence, where the Commission did not consider the worker's "vocational history, educational limitations, learning disability and age 'in concert with his multiple disabling conditions and a need

---

2. As noted by Larson and Larson:

A considerable number of the odd-lot cases involve claimants whose adaptability to the new situation created by their physical injury is constricted by lack of mental capacity or education. This is a sensible result, since it is a matter of common observation that a man whose sole stock in trade has been the capacity

to perform physical movements, and whose ability to make those movements has been impaired by injury, is under a severe disadvantage in acquiring a dependable new means of livelihood.

Larson & Larson, *supra* § 57.51(d), at 10–336 to 10–353 (footnotes omitted).

for total re-education.'" *Id.* at 1027 (citation omitted). The *Norton* court ·explained that the Commission

> failed in its administrative responsibility and function to evaluate [the employee's] permanent *disability* which should have included such factors as [the employee's] "present and future ability to engage in gainful activity as it is affected by such diverse factors as age, sex, education, economic and social environment, in addition to the definite medical factor—permanent impairment."

*Id.* (citation omitted).

■ We note that the facts of this case are distinguishable from those at issue in *Ortiz v. Industrial Commission,* 766 P.2d 1092 (Utah Ct.App.1989), *Zimmerman v. Industrial Commission,* 785 P.2d 1127 (Utah Ct.App.1989), and *Zupon v. Industrial Commission,* 860 P.2d 960 (Utah Ct.App.1993), which hold that unless the Commission concludes that an employee has suffered a compensable industrial injury, it will not consider "whether [the employee] qualifies for tentative permanent total disability." *Zimmerman,* 785 P.2d at 1132. " '[U]nless the claimant has suffered a compensable industrial injury, the [odd lot] doctrine is inapplicable no matter how compelling the other factors.'" *Id.* (quoting *Ortiz,* 766 P.2d at 1094). In these cases, unlike the present case, the claimants failed to establish medical causation between the industrial accident and the claimed impairment, and thus, the Commission was precluded from employing the sequential decision-making process or considering the odd lot doctrine. *Accord Zupon,* 860 P.2d at 962 (holding Commission did not err in finding claimant's arthritic condition, which was unrelated to industrial accident and was not caused by industrial injury, was cause of claimant's inability to work); *Zimmerman,* 785 P.2d at 1131 (holding findings of Commission that industrial accident did not in any way aggravate preexisting condition and all residual problems were due to preexisting condition were supported by substantial evidence); *Ortiz,* 766 P.2d at 1095 (holding Commission properly denied claim-

ant's motion for permanent total disability where it adopted medical panel's view that prior industrial accident did not cause impairment, but rather, degeneration of back resulted from two subsequent car accidents and thus no medical causation existed).

In the instant case, Smith is a forty-five-year-old general laborer with a fifth grade education who lacks the· ability to read well. The record contains uncontroverted evidence of his physical impairment and his inability to perform the work required by his former job or any similar work. Smith has not worked since the May 23, 1990 industrial accident. Moreover, the medical panel opined that adequate conditioning would be required to enable him to perform even light duty work. The Commission found that Smith's impairment due to his industrial accident was "not inconsequential." Additionally, the Commission found that since his last surgery in August 1992, Smith has been in continuous pain which has left him dependent on pain medications prescribed by his treating physician.

At the hearing before the ALJ, Smith testified that although he can walk some, he cannot walk around the block and he cannot sit. He further testified that when he travels by car, he has to lie down. Smith appeared at the hearing pushing a walker in front of him. He stood throughout the hearing and audibly groaned on occasion. The hearing was recessed at one point to permit Smith to lie down.[3] As noted by Commissioner Carlson in his dissenting opinion, in light of Smith's age and illiteracy, his "injury at work unleashed a· cascade of events that has left him permanently and total[ly] disabled."

The medical panel's psychiatric examiner diagnosed Smith as suffering from depression and adopted the psychiatric examination of an independent psychiatrist that Smith suffered from somatoform pain disorder, opiate dependency, and personality disorder. Prior to the industrial accident, these conditions did not impair Smith's ability to perform his job—in fact, it is because of his back pain that Smith has become dependent on opiate medications. Moreover, Smith con-

---

**3.** The Commission majority included in its decision the ALJ's observation that Smith "has a pattern of exaggerated physical complaints."

tends he suffers from depression as a result of no longer being able to work and support his family as he did prior to the industrial accident.

In finding medical causation, there is not a particular threshold requirement of physical impairment. *See Hardman,* 725 P.2d at 1325–26; *Marshall,* 681 P.2d at 211–13. Rather, a claimant has met his burden of proving medical causation if by a preponderance of the evidence he or she can establish that "the disability is medically the result of an exertion or injury that occurred during a work-related activity." *Allen,* 729 P.2d at 27. In adopting the medical panel's report, the Commission essentially found that Smith had, as a result of an industrial accident, suffered a back injury which resulted in an eight and seven-tenths percent impairment of his whole person. Further, the Commission awarded Smith temporary total disability and permanent partial disability benefits based upon the medical panel's report and other factual evidence. While the issue of temporary total disability and permanent partial disability are distinct from the issue of permanent total disability,[4] the Commission essentially found medical causation and then determined, without following the proper procedural steps, that Smith was not entitled to permanent total disability benefits because he had failed to prove that the claimed permanent total disability was wholly caused by the industrial accident. Such a standard for causation is simply too high. Contrary to the Commission's conclusion, Smith did establish medical causation—the uncontroverted facts and *relevant* portions of the medical panel's report as adopted by the Commission undeniably establish that an industrial accident caused a portion of Smith's physical impairment; that he cannot perform his former job; and that he is currently disabled. As such, the Commission erred in not making a tentative finding of permanent total disability and referring Smith to the division of vocational rehabilitation.

In making its decision that in spite of Smith's disability he was not permanently totally disabled, the Commission collapsed the decision-making process and ignored the procedural steps required under the sequential decision-making process[5] and the odd lot doctrine. Smith has proven medical causation, and he has established a prima facie case of permanent total disability. Accordingly, it is "mandatory that the industrial commission of Utah refer [Smith] to the division of vocational rehabilitation under the State Board of Education for rehabilitation training." Utah Code Ann. § 35-1-67(5)(a) (1988) (amended). It is then the province of the division of vocational rehabilitation to determine whether Smith can, through adequate conditioning, be employable, or whether he is unable to be successfully rehabilitated and is entitled to permanent total disability benefits. *See id.* § 35-1-67(5)(b). If the division of vocational rehabilitation certifies that Smith has fully cooperated, and that in its opinion he is unable to be rehabilitated, the Commission must then consider the issue of permanent total disability. *See id.*

## CONCLUSION

Thus, we hold that Smith presented a prima facie case of permanent total disability to the Commission. We remand this matter to the Commission for additional proceedings consistent with this opinion, including a referral to the division of vocational rehabilitation for an evaluation of whether Smith can be rehabilitated and which may include further evidence on the issue of disability as defined herein at the Commission's discretion.

BENCH and ORME, JJ., concur.

---

4. *See Zupon v. Industrial Comm'n,* 860 P.2d 960, 963 (Utah Ct.App.1993) (noting determination of medical causation between industrial accident and claim of permanent total disability "is a different question from, and not controlled in any way by, the determination that [claimant's] industrial accident caused a permanent *partial* disability.").

5. *See* Utah Code Ann. § 35-1-67(1) (1988) (amended) (providing "[p]ermanent total disability for purposes of [the Workers' Compensation Act] requires a finding by the commission of total disability, as measured by the substance of the sequential decision-making process of the Social Security Administration").