Theodore HODGES, Plaintiff,

v.

WESTERN PILING AND SHEETING CO., State Insurance Fund, and Industrial Commission of Utah, Defendants.

No. 19248.

Supreme Court of Utah.

April 14, 1986.

Roger D. Sandack, Salt Lake City, for plaintiff.

James A. Black, David L. Wilkinson, Frank V. Nelson, Gilbert Martinez, Salt Lake City, for defendants.

HALL, Chief Justice:

Petitioner Theodore Hodges appeals an order of the Industrial Commission that awarded petitioner partial benefits under the workers' compensation law, but denied him permanent total disability benefits and reduced his weekly benefit amount. We affirm.

Petitioner's upper right arm was injured during the course of his employment with Western Piling and Sheeting Co. The accident took place on February 23, 1981. Petitioner was sixty-eight years of age at the time of the accident.

Petitioner had begun receiving social security retirement benefits at age sixty-five, but continued to work forty hours per week for Western Piling. He was aware that his social security benefits could be reduced if he earned more than $5,500 per annum.

Following the accident, petitioner was hospitalized with a severe flare-up of his previously asymptomatic arthritic condition. On June 20, 1981, he was released from the hospital. Shortly thereafter, he was readmitted.

Frank Dituri, M.D., a medical consultant hired by the State Insurance Fund, interviewed petitioner in the hospital during petitioner's second stay. Dituri concluded that petitioner's arthritic condition was a preexisting condition not attributable to the industrial injury or to an allergy to the cortisone treatments petitioner had received for the injury.

Petitioner timely filed his claim for workers' compensation benefits. On March 11, 1982, a hearing was held and a medical panel appointed. The medical panel's report concluded that petitioner was one hundred percent impaired due to the arthritis alone, but that the arthritis, although it flared up following the industrial injury, was not a result of the injury. The panel found that petitioner was thirty-five percent totally impaired, excluding the arthritis: twenty-six percent of the impairment was preexisting and nine percent of the permanent loss of body function was due to the industrial injury. A Division of Rehabilitation Services report concluded that petitioner was not a good candidate for rehabilitation in view of his age and physical impairment.

The administrative law judge awarded petitioner permanent total disability benefits. Following a motion for review by defendants, the administrative law judge revised his order, finding that petitioner was not totally disabled due to the industrial accident. The administrative law judge also ordered that the weekly benefits paid to plaintiff reflect $5,500 per year in earnings ($5,500 divided by 52 weeks), rather than earnings of $624 per week (40 hours per week at $15.60 per hour).

Petitioner moved for reconsideration of the revised order. The Commission denied the motion and affirmed the administrative law judge's order. Petitioner then submitted a petition for review on June 8, 1983, which was granted by this Court.

Petitioner's first point on appeal is that the administrative law judge erred in the manner in which he computed petitioner's average weekly wage. The administrative law judge computed petitioner's benefits on the basis that petitioner was earning $5,500

per year. The judge specifically found that petitioner

was, and had been, working only long enough each year to reach the maximum of $5,500 allowed by the Social Security Administration before his social security retirement benefits became subject to offset by his excess earnings above $5,500.... [He] had no intention of working any longer than necessary to earn approximately $5,500.

In reviewing questions of fact, this Court gives great deference to the Commission's findings. Only where the findings are without foundation in the evidence will this Court reverse.[1] In this case, there was clearly a basis for finding that petitioner intended to work only until he had earned $5,500. Dr. Dituri, after interviewing and examining petitioner, noted that fact specifically in his letter and report of consultation to the State Insurance Fund.[2] Further, at the hearing petitioner himself implied as much in his testimony.[3] On the basis of these facts, the administrative law judge then determined that U.C.A., 1953, § 35–1–75(1)(g)(3) (Supp. 1985) was the proper subsection to apply in determining petitioner's average weekly wage.[4] The administrative law judge found:

[I]t must ever be borne in mind that the basic theory of workmen's compensation is not damages but replacement of lost income.... [Petitioner] was and had been working only long enough each year to reach the maximum of $5,500 allowed by the Social Security Adminis-

tration .... It is extremely difficult to justify an award of compensation for permanent partial impairment based upon the state maximum because 52 weeks of benefits paid at the rate of $153 per week would result in the payment of $7,956, which is nearly $1,500 more than the applicant would have earned had he continued working and the accident had never occurred. Consequently, it seems only fair and reasonable to apply the provisions of subparagraph [3] of section 35–1–75....

Petitioner, however, claims that section 35–1–75(1)(e) indicates the method that should be used to determine petitioner's weekly wages since petitioner was working forty hours per week at the time of the accident. Under the facts of this case, this contention is unavailing.

Where the language of a statute indicates a legislative intention to commit broad discretion to an agency to effectuate the purposes of a legislative scheme, this Court will not substitute its judgment for that of the agency as long as the agency's interpretation has warrant in the record and a reasonable basis in the law.[5] The legislature by enacting section 35–1–75 clearly intended the Commission to have some discretion to weigh fairness considerations in fulfilling its role.

Thus, the question of which subsection of section 35–1–75 should be applied in a given case is a mixed question of law and fact on which we defer to the discretion of the Commission as long as its decision is rea-

**1.** *State Tax Comm'n v. Industrial Comm'n,* Utah, 685 P.2d 1051, 1052 (1984).

**2.** Dr. Dituri's letter stated: "For the past few years, [petitioner] has been working just enough to earn the maximum allowed while on Social Security."

**3.** The testimony was as follows:
Q. Now since you have been on Social Security, you have continued to work? Is that correct?
A. Well, you're entitled to work—well, like this year I can make $5,500.00 and stay on Social Security.
Q. So you work just enough to—

A. I try to keep working, to keep in shape. Because if you lay around, you're not going to be worth a shit. So I try to keep working. I was in good shape, and I tried to keep working. I could use the money. That's about what it amounted to.

**4.** Section 35–1–75(1)(g)(3) states: "If none of the methods in subsection (1) will fairly determine the average weekly wage in a particular case, the commission shall use such other method as will, based on the facts presented, fairly determine the employee's average weekly wage."

**5.** *Salt Lake City Corp. v. Department of Employment Sec.,* Utah, 657 P.2d 1312, 1316 (1982).

sonable and rational.[6] In this case, the administrative law judge and the Commission clearly were within the bounds of discretion in determining to apply subsection (1)(g)(3).

■ Petitioner also contends that the administrative law judge erred in failing to find that petitioner was permanently and totally disabled and in failing to find that petitioner's arthritic condition was a preexisting impairment. A determination whether an individual is permanently and totally disabled is a factual question to be resolved by the Commission and will not be set aside by this Court unless there is no substantial evidence in the record to support it.[7] In this case, there is substantial evidence in the record to support the Commission's determination that petitioner was not permanently and totally disabled as a result of his work-related injury and the impairment preexisting the industrial accident.

Both the medical panel and petitioner's treating physician determined that petitioner's industrial injury had stabilized as of June 23, 1981, and that petitioner was not so severely impaired at that time as to be found permanently and totally disabled. While it is unquestioned that the medical panel found petitioner to be one hundred percent physically impaired, the panel also found that the total impairment was due to the onset of severe arthritic problems. As the medical panel report stated:

> [Petitioner] would be a hundred percent impaired as a result of the arthritis alone.... The diffuse severe arthritic problems had its [sic] onset subsequent to the accident of February 23, 1981, but was in no way related to those events.... The total impairment exclud-

ing the generalized arthritis is thirty-five percent permanent loss of body function.

The administrative law judge determined that under the facts extant petitioner's thirty-five percent permanent loss of body function was insufficient to find him permanently and totally disabled for the purposes of the workers' compensation statute. This finding is clearly supported by the above evidence.

Finally, we note that there seems to be some discrepancy in the figures used to determine the benefits in this case. The medical panel found that there was a twenty percent permanent physical impairment of plaintiff's upper right arm due to the industrial injury. This equates to twelve percent of the whole man, although the medical panel apparently found that it equalled nine percent. The medical panel then found that plaintiff had twenty-six percent permanent loss of body function to the whole man due to preexisting conditions. The medical panel finally concluded that plaintiff had total impairment of thirty-five percent permanent loss of body function to the whole man. These figures were adopted by the administrative law judge. However, these figures do not add up, and they should be reexamined for correctness.

In all other respects, the judgment of the Commission is affirmed.

STEWART, DURHAM, HOWE and ZIMMERMAN, JJ., concur.

---

6. *See Gibson v. Board of Review,* Utah, 707 P.2d 675, 676 (1985).

7. *Brundage v. IML Freight, Inc.,* Utah, 622 P.2d 790, 792 (1980) (quoting *Clark v. Interstate Homes, Inc.,* Utah, 604 P.2d 937 (1979)).