**James LANCASTER, Plaintiff,**

v.

**GILBERT DEVELOPMENT, State Insurance Fund, and the Second Injury Fund, Defendants.**

**No. 20897.**

Supreme Court of Utah.

April 20, 1987.

Michael E. Dyer, Stephanie A. Mallory, Salt Lake City, for plaintiff.

Dennis Lloyd, Susan B. Diana, Salt Lake City, for State Ins. Fund.

Erie V. Boorman, Salt Lake City, for Second Injury Fund.

DURHAM, Justice:

The claimant, James Lancaster, seeks review of the denial of workers' compensation benefits by the State Industrial Commission for injuries from a heart attack that occurred while he was clearing snow with a backhoe at Brian Head Ski Resort. We examine the evidence on this writ of review to determine if the claimant's heart attack is the result of an injury "by acci-

dent arising out of or in the course of his employment." U.C.A., 1953, § 35–1–45 (Supp.1986). We recently established the analytical framework for internal injury cases such as this in *Allen v. Industrial Commission,* 729 P.2d 15 (Utah 1986). Using the analysis in *Allen,* we affirm the decision of the Industrial Commission.

On February 17, 1984, the claimant, aged 43, arrived for work at Brian Head Resort at his usual hour of 7:00 a.m. The elevation at Brian Head Resort is approximately ten thousand feet. Claimant's first task was to clear snow using a backhoe. Although the temperature outside was cold, the cab of the backhoe was heated. All of the backhoe controls were hydraulically operated and required no unusual effort to operate. During the morning's work, the claimant climbed in and out of the backhoe two or three times.

The claimant experienced chest pains, which became more severe as the day progressed. These pains were more severe than similar pains he had experienced four days earlier. When the pains became debilitating, he informed his supervisor, who then called paramedics; the claimant was transported to a hospital in Cedar City, Utah. The treating physician determined that the claimant was suffering from acute anterior myocardial infarction. After one week at the hospital, the claimant was released to the care of his personal physician, Dr. Chanderraj. Although this was the claimant's first heart attack, he had several preexisting risk factors that predisposed him to heart attacks: a twenty-year smoking history, an elevated serum cholesterol level, an elevated uric acid level, and borderline diabetes.

On August 10, 1984, the Industrial Commission held a hearing in which one doctor, Dr. Perry, was appointed to a medical panel. A hearing on the medical panel findings was held on March 25, 1985. On April 5, 1985, the administrative law judge issued his findings of fact, conclusions of law, and order. The administrative law judge reviewed the conflicting medical evidence and then adopted the medical findings of the medical panel as his own. The administrative law judge found:

> [T]he Applicant's work activities and the myocardial infarction of [February 17, 1984] do not constitute an injury by accident. The Applicant's heart attack was unexpected, but there was nothing about his work activities that could constitute an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events. His heart attack appears to have been a mere coincidence, and his work activities did not contribute significantly to its occurrence. At best, it is conjectural as to whether it even precipitated his heart attack, but it clearly was not a significant precipitating cause. There was no evidence that the Applicant's work activities on February 17, 1984 were particularly different from the activities he had been performing for many weeks prior thereto.

The administrative law judge ultimately denied the claim on the ground that the claimant failed to show that the heart attack was "by accident" and that the heart attack was medically caused by an exertion in the workplace.

Our scope of review of factual findings in Industrial Commission cases is limited. We have explained in prior cases:

> The reviewing court's inquiry is whether the Commission's findings are "arbitrary and capricious" or "wholly without cause" or contrary to the "one [inevitable] conclusion from the evidence" or without "any substantial evidence" to support them. Only then should the Commission's findings be displaced.

*Kaiser Steel Corp. v. Monfredi,* 631 P.2d 888, 890 (Utah 1981) (*quoted in Pittsburgh Testing Laboratory v. Keller,* 657 P.2d 1367, 1370 (Utah 1983), and *Sabo's Electronic Service v. Sabo,* 642 P.2d 722, 725 (Utah 1982)). At the time of his decision, the administrative law judge did not have the benefit of our analytical framework for accident cases involving internal failures set forth in *Allen v. Industrial Commission,* 729 P.2d 15 (Utah 1986). Nevertheless, the record is sufficiently developed for

us to apply *Allen* to the facts and conclusions in the case before us.

In *Allen v. Industrial Commission,* we explained that the Utah Workers' Compensation Act, section 35–1–45, requires proof that an injury occurred "by accident" and proof of a causal connection between the accident and the activities or exertions required in the workplace. 729 P.2d at 18. The administrative law judge's ruling shows that he found the evidence insufficient to meet both the accident and the causation elements.

In *Allen,* we embraced the definition of "by accident" first formulated in *Purity Biscuit Co. v. Industrial Commission,* 115 Utah 1, 201 P.2d 961 (1949). We rejected the position that an accident requires an unusual event or occurrence. 729 P.2d at 20. An ordinary or usual exertion is sufficient to meet the "by accident" definition if "the result of an exertion was different from what would normally be expected to occur, the occurrence was unplanned, unforeseen, unintended and therefore by accident." 729 P.2d at 22. The critical factor when determining whether an incident is by accident is unexpectedness. 729 P.2d at 22.

■ Despite a finding that the heart attack was unexpected, the administrative law judge concluded there was no accident primarily because the claimant was undertaking his usual work duties. That conclusion cannot stand in light of the standard set forth in *Allen.* Although the claimant had experienced similar pains four days earlier, he had not been advised of the etiology of those pains and he had no forewarning that they would occur again on February 17. Moreover, there is nothing in the claimant's job duties to suggest that he would suffer a heart attack. There is overwhelming evidence that the claimant did not intend to have a heart attack, nor did he anticipate one. These factors, taken together with the finding that the myocardial infarction was the "unexpected" result of an exertion in the workplace, require the conclusion that the heart attack was "by accident."

The next step requires us to analyze the causal connection between the heart attack and the working conditions. *See Hone v. Shea,* 728 P.2d 1008, 1011 (Utah 1986). We adopted Professor Larson's two-step causation analysis in *Allen v. Industrial Commission.* 729 P.2d at 25. In order to meet the causation requirement, there must be sufficient evidence of legal cause and medical cause. Under the legal cause test, "a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition." 729 P.2d at 25. When a claimant has no preexisting risk factors, any exertion connected with the employment and causally connected with the injury as a matter of medical fact will satisfy the legal causation test. 729 P.2d at 26.

In addition to proving legal causation, the claimant must also prove medical causation. "Under the medical cause test, the claimant must show ... that the stress, strain or exertion required by his or her occupation led to the resulting injury or disability." 729 P.2d at 27.

In this case, the administrative law judge did not distinguish in his causation analysis between legal and medical causation. However, it is clear from the medical testimony and other evidence presented to the administrative law judge that his decision was based on the failure to prove medical causation. Because the result in this case turns on the issue of medical causation, we will not examine the issue of legal causation.

■ The claimant argues that his work activities in cold weather and at a high altitude precipitated the myocardial infarction. The medical evidence before the administrative law judge was less than conclusive. The claimant's physician, Dr. Chanderraj, was the doctor most certain that the working conditions at Brian Head contributed to the injury. His opinion, however, was not unequivocal. He stated that the altitude, cold, and working conditions "probably" precipitated the heart attack. Dr. Chanderraj answered questions by the claimant's counsel as follows:

Q. Let me ask you, Doctor, during all of the time that Mr. Lancaster has been your patient, have you had an opportunity to form an opinion as to whether or not the elevation, the cold, and the working conditions at the time of Mr. Lancaster's myocardial infarction precipitated that heart attack?

A. This is a very difficult question to answer because it's a gray area in the field of cardiology; the exact role of precipitating factors in producing the event, but it is well known that high altitude, where the oxygen content of the air is low, especially in cold weather, can induce a myocardial event

. . . .

Q. Would it be your opinion that the cold, exposure, and the altitude, and the work conditions played a significant role or would be the trigger or the lighting up process of the myocardial infarction?

A. I think we did go over this. I do feel it triggered—let me put it another way. If he had not been working up on that particular day in the cold atmosphere, operating the heavy equipment, in spite of having—in spite of five days history of chest pain, he probably would not have sustained a myocardial infarction.

Dr. Perry, the chairman of the medical panel and a cardiologist, testified it was "likely" that the conditions under which Mr. Lancaster was working aggravated his preexisting heart condition. However, Dr. Perry also was less than certain about the causal connection between the work conditions and the myocardial infarction. In his report to the administrative law judge, Dr. Perry identified and ranked the role of various risk factors, including those associated with work, in precipitating the claimant's myocardial infarction. He stated in his report:

Mr. Lancaster has mild diabetes mellitus, smokes cigarettes, has an elevated uric acid and an elevated serum cholesterol level, all of which increase risk of coronary artery disease. In very rough terms the cigarette smoking, diabetes and high cholesterol approximately each double the risk of coronary artery disease such that with these three plus the uric acid elevation, his risk for coronary artery disease is 8–10 times higher than another male of his same age. From information gleaned from the records, summary of testimony and talking to Mr. Lancaster himself, I did not view his work as a risk factor for a myocardial infarction. While it was apparently cold, he was not involved in any unusual exertion, neither was he subjected to any unusual stress.

. . . .

. . . While it is possible the cold exposure and his exertion had a role in precipitating the myocardial infarction, it is my opinion that is is unlikely they played a significant role. His 5 days of unstable angina lead me to believe that the patient was about to have a myocardial infarction, and the rather moderate amount of exertion and the length of time spent working simply offered an appropriate time and place for this event.

When asked to quantify the contribution of preexisting risk factors and work factors to the claimant's myocardial infarction, Dr. Perry assigned a value of 90 percent to preexisting conditions and 10 percent to work conditions. Dr. Perry explained, however, that his assessment of the factors was "a fairly random guess."

In addition, the State Insurance Fund had its doctor, Frank Dituri, review the claimant's medical records. Dr. Dituri opined that there was no evidence to indicate that the claimant's myocardial infarction was caused by his work or the altitude and cold at his place of work. Dr. Dituri concluded, "The type of work activities described could not precipitate any acute myocardial infarction." According to Dr. Dituri, the claimant's injury was "due to the normal progression of arteriosclerotic coronary artery disease that had been present for several years and was due to such factors as his smoking, his hypercholesterolemia, his poorly controlled diabetes and his prior history of alcohol abuse."

Thus, although there may have been some connection between the heart attack and the cold weather and high altitude, the evidence of any such connection is inconclusive. Not one of the doctors was willing to state with medical certainty that the claim-

ant's injury was caused by work-related factors. Thus, there is competent and comprehensive medical evidence in the record upon which the administrative law judge could rely in concluding that medical causation was lacking. Although the medical evidence was conflicting, it is the responsibility of the administrative law judge to resolve factual conflicts.

We hold that the Industrial Commission's conclusion that there was no medical causal connection between work conditions and the claimant's heart attack is neither "arbitrary or capricious" nor "without any substantial evidence to support it." We therefore affirm the order of the Industrial Commission.

HALL, C.J., and HOWE and ZIMMERMAN, JJ., concur.

STEWART, Associate C.J., concurs in the result.