**Robert C. LARGE, Plaintiff,**

v.

**INDUSTRIAL COMMISSION OF UTAH, Howard Trucking of Utah, Inc., and/or Workers' Compensation Fund of Utah and the Second Injury Fund, Defendants.**

No. 870437–CA.

Court of Appeals of Utah.

Aug. 3, 1988.

Jack C. Helgesen (argued), Helgesen & Waterfall, Ogden, for plaintiff.

James R. Black (argued), Wendy B. Moseley, Black & Moore, Salt Lake City, for defendants.

Barbara Elicerio, Legal Counsel, Industrial Com'n, Salt Lake City, for Industrial Com'n of Utah.

Before GREENWOOD, BILLINGS and DAVIDSON, JJ.

OPINION

GREENWOOD, Judge:

Robert C. Large appeals an Industrial Commission order which denied him permanent total disability benefits. We affirm.

On March 25, 1985, Large applied for a job as a truck driver with Howard Trucking. For about two and one-half years before applying for the job, Large was self-employed. Prior to that time, he had been a truck driver for forty years.

As part of the job application process, Large was required to take a driving test. He climbed into a truck but discovered the truck's clutch was not working properly. As Large stepped out of the truck, he slipped and fell on his back. At the time of the accident, Large was sixty-one years old, about six feet two and one-half inches tall and weighed 376 pounds. He was transported to Dixie Medical Center where X-rays were taken. The X-rays did not reveal a fracture, and the emergency room physician prescribed twenty-four hours bed rest. Large drove to his home in Phoenix, Arizona the following day and made an appointment with Dr. Delbridge, an osteopathic physician. Dr. Delbridge had seen Large six months earlier and had noted at that time that Large's past history included back problems. Dr. Delbridge examined Large and diagnosed his condition as acute lumbosacral sprain and arthritis and fibrositis of the lumbosacral spine. Dr. Delbridge stated that Large had difficulty walking due to his weight and back injuries and that, in his opinion, Large was unem-

ployable but might be trainable for work he could perform while sitting. In April 1985, Dr. Ditchek examined Large and stated that "[r]eactive sclerosis is present and suggests that this may be of some age, but the possibility of new compression superimposed on old changes must be considered." In December 1985, Large saw Dr. Robert S. Barbosa who reported that Large's X-rays revealed evidence of advanced arthrosis and a suggestion of a compression fracture. Dr. Barbosa attributed 5% of Large's disability to his previous injury and 5% to the present injury. Dr. Barbosa also recommended that Large undergo a CT scan to determine the extent of the fracture and if it extended into the spinal canal.

On April 22, 1986, an Administrative Law Judge (A.L.J.) held a hearing on Large's application for temporary benefits. After the hearing, the A.L.J. wrote to Dr. Barbosa and asked if the 10% permanent physical impairment was attributable to the March 25, 1985 injury, if that injury aggravated Large's pre-existing condition and what percentage impairment rating he would assign to Large's condition prior to March 25, 1985. Dr. Barbosa responded, stating:

> At this point, to answer your 4 questions, I feel that the fall in March directly aggravated the patient's preexisting condition, although, according to his testimony he was quite active. The patient also has a 10% permanent physical impairment judging from his previous laminectomy surgery which certainly contributes to what I feel is now a permanent physical impairment since the patient does have a loss of strength, especially of the right lower extremity, rather severe discomfort extending from the lumbar spine. I would give it approximately 5% due to the patient's previous lumbar surgery, performed in 1953. This surgery was done for herniated lumbar disc.

Based on this letter and the medical reports submitted at the hearing, the A.L.J. entered findings of fact and conclusions of law in September 1986 awarding Large temporary total disability benefits. Specifically, the A.L.J. found that some of Large's impairment related to an earlier back injury Large sustained in 1953 and that further medical work was needed to determine the relationship between the present and the prior injury. The A.L.J. also stated that even though no Utah case addressed whether workers' compensation should cover those injured during a "try-out" period, the statute should be construed liberally in favor of coverage. Neither party appealed the award of temporary total disability benefits.

In April 1987, Large requested permanent total disability benefits. Attached to his request was a medical report prepared by Dr. David Plone. The report, based on an X-ray examination, noted moderate degenerative changes throughout the lumbar spine, facet joint hypertrophy and arthritic disease. Further, the report stated, "There is compression of the superior vertebral body plate of L3, but this appears to be an old compression fracture." Without holding a further hearing, the A.L.J. entered supplemental findings and conclusions, stating that Large had a 10% disability, 5% attributable to the 1953 injury and 5% attributable to the 1985 injury. The A.L.J. also stated that although Large was an employee for purposes of temporary total and permanent partial disability, he was not an employee for purposes of permanent total disability. The A.L.J. then found that Large's age, obesity, lack of transferrable skills and prior back surgery constituted the proximate or dominant cause of his disability. The A.L.J. concluded that Large was entitled to permanent partial disability benefits but not permanent total disability benefits because the proximate or dominant cause of his unemployability was not the March 25, 1985 accident. Large subsequently filed a motion for review, which the Industrial Commission denied. The Commission noted that the only issue on review was whether Large was entitled to permanent total disability benefits and agreed with the A.L.J. that Utah Code Ann. § 35–1–67 (1985)[1] implies a causal connection between the injury and the permanent total disability. The Commission further

---

1. This section governs procedures and payments for permanent total disability.

stated, "The concept of proximate cause serves the purpose of allowing those whose disabilities are truly the result of the industrial injury to be properly compensated." This appeal followed.

■ On appeal, Large claims that the Commission erred in finding that factors other than the 1985 accident were the proximate or dominant cause of his permanent total disability, and concluding, as a result of that finding, that he was not entitled to permanent total disability benefits. We agree that a "proximate cause" analysis, as that term is commonly used, is not appropriate in workers' compensation cases. Proximate cause is used primarily in tort law and involves analysis of foreseeability, negligence and intervening causes. These factors are not present in the statutory workers' compensation system, which excludes consideration of fault. A. Larson, 1 *Workmen's Compensation Law* § 6.60 (1985).

Although proximate cause is not an appropriate standard, the Utah Supreme Court has, nevertheless, required proof of a causal relationship as a prerequisite to awarding workers' compensation benefits. *Allen v. Industrial Comm'n*, 729 P.2d 15 (Utah 1986). In *Allen*, the Utah Supreme Court interpreted Utah Code Ann. § 35–1–45 (1986)[2], and explained that "by accident arising out of or in the course of employment" requires: (1) proof that the injury occurred "by accident"; and (2) proof of a causal connection between the accident and the activities or exertions required in the workplace. *Id.* at 18. In analyzing the causal connection, the Court adopted a two-part test which requires a claimant to establish legal cause and medical cause. Under the legal cause test "a claimant with a preexisting condition must show that the employment contributed something substantial to increase the risk he already faced in everyday life because of his condition." *Id.* at 27. Further, under the medical cause test, the claimant must prove "the disability is medically the

result of an exertion or injury that occurred during a work-related activity." *Id.* at 26. The standard of proof for causation is by a preponderance of the evidence. *Id.* at 23. In *Hodges v. Western Piling & Sheeting Co.*, 717 P.2d 718 (Utah 1986), the Court considered an Industrial Commission determination which awarded permanent partial disability benefits but denied permanent total disability benefits to a sixty-eight year old worker who injured his arm in an industrial accident. The Court affirmed, finding that "[w]hile it is unquestioned that the medical panel found petitioner to be one hundred percent physically impaired, the panel also found that the total impairment was due to the onset of severe arthritic problems." *Id.* at 721. The petitioner had a prior asymptomatic arthritic condition which flared up after the accident, but which was found to have no causal relationship to the industrial accident. Professor Larson has also observed that there is a distinction "between a pre-existing disability that independently produces all or part of the final disability, and a pre-existing condition that in some way combines with or is acted upon by the industrial injury." A. Larson, 2 *Workmen's Compensation Law* § 59.22(b) (1987). Therefore, a claimant for permanent total disability benefits must prove medically that his disability was caused by an industrial accident.

■ The critical inquiry in this case, therefore, is whether the Commission's decision should be affirmed because Large did not prove by a preponderance of the evidence that the industrial accident was the medical cause of his disability. In reviewing the Industrial Commission's factual findings, we will not disturb those findings unless they are " 'arbitrary and capricious,' or 'wholly without cause,' or 'contrary to the one [inevitable] conclusion from the evidence,' or 'without any substantial evidence to support them.' " *Lancaster v. Gilbert Dev.*, 736 P.2d 237, 238 (Utah 1987) (quoting *Kaiser Steel Corp. v.*

2. The statute provides that "Every employee ... who is injured ... by accident arising out of or in the course of his employment ... shall be paid compensation for loss sustained on account of the injury...."

*Monfredi,* 631 P.2d 888, 890 (Utah 1981)). The medical reports in this case indicate that prior to the accident Large had back problems relating to a 1953 injury and herniated lumbar disc surgery. In addition, Dr. Delbridge's letter stated that Large had difficulty walking due to his weight and back injuries. Dr. Barbosa's medical report stated that Large's X-rays suggested a compression fracture but that a CT scan was required to determine the extent of the fracture. Subsequently, Dr. Plone stated that the compression fracture "appears to be an old compression fracture." Although the Industrial Commission erroneously applied the proximate cause test rather than the causation test articulated in *Allen* and *Hodges,* we find substantial evidence in the record to support a finding that the 1985 injury was not the medical cause of Large's permanent total disability status and that Large's age, obesity, lack of transferable skills and prior back surgery resulted in his disability.

Large also asserts that the A.L.J. erred in finding that he was not an employee for purposes of permanent total disability benefits. However, the A.L.J.'s findings of fact and conclusions of law and the Commission's denial of the motion for review are based on the inadequate causal link between the disability and the injury and not on Large's employee status. Therefore, the issue of whether Large was injured "in the course of his employment," while performing "try-out" tasks, is not before us and is not addressed in this opinion.

██ Finally, Large claims that he is entitled to permanent total disability benefits under Utah Code Ann. § 35–1–69 (1985) because the accident aggravated his pre-ex-

isting injury.[3] We disagree. Section 35–1–69 determines the apportionment of compensation between the Second Injury Fund and the employer or its insurance carrier and does not address entitlement to permanent total disability benefits. Entitlement to benefits is a prerequisite to consideration of apportionment. Where the disability is the result of pre-existing conditions and not an industrial accident, a claimant is not entitled to disability benefits.

Affirmed.

BILLINGS and DAVIDSON, JJ., concur.

**3.** The version of section 35–1–69 which was in effect in 1985 when Large was injured stated:
   If any employee who has previously incurred a permanent incapacity by accidental injury ... sustains an industrial injury for which either compensation or medical care, or both, is provided by this chapter that results in permanent incapacity which is substantially greater than he would have incurred if he had not had the pre-existing incapacity, or which aggravates or is aggravated by such pre-existing incapacity, compensation shall be awarded on the basis of the combined injuries, but the liability of the employer for such compen-

sation ... shall be for the industrial injury only. The remainder shall be paid out of the Second Injury Fund....
   The statute also provides that any aggravation of a pre-existing condition shall be deemed "substantially greater." Recently, section 35–1–69 was repealed and reenacted. Under the current version of section 35–1–69, the test for apportioning liability for compensation is not the "substantially greater" test. Instead, the statute requires a 10% pre-existing whole person permanent impairment before liability for compensation is apportioned.