Steve ZIMMERMAN, Petitioner,

v.

INDUSTRIAL COMMISSION OF UTAH, Granite Beef, Inc. and/or Workers' Compensation Fund of Utah and Employers' Reinsurance Fund, Respondents.

No. 890191–CA.

Court of Appeals of Utah.

Nov. 28, 1989.

Rehearing Denied Dec. 20, 1989.

Bruce J. Wilson, Provo, for petitioner.

Richard Sumsion, Salt Lake City, for Workers' Compensation Fund of Utah.

Erie V. Boorman Jr., Salt Lake City, for Employers' Reinsurance Fund.

Before BILLINGS, GARFF and GREENWOOD, JJ.

GREENWOOD, Judge:

Stephen P. Zimmerman appeals an Industrial Commission order which denied him permanent disability benefits. We affirm.

In January 1987, Zimmerman was employed by Granite Beef, Inc. His duties consisted of cutting and boxing meat, requiring him to lift heavy boxes and pallets. On January 26, 1987, Zimmerman, while lifting an empty pallet, heard a pop in his low back and felt an immediate sharp pain. He reported the incident to his supervisor and left work to obtain medical attention. At the time of the accident, Zimmerman was twenty-two years of age. He had worked as a laborer since age seventeen and had never complained of back problems prior to the accident. X-rays and a CT scan revealed no acute fracture. His injury was diagnosed as a musculotendinous strain.

Zimmerman applied for disability benefits on February 5, 1987 and received temporary total disability benefits from January 30, 1987 to March 4, 1987. On approximately March 1, 1987, Zimmerman returned to work. While lifting a heavy piece of meat at work, he experienced a recurrence of back pain. He remained off work for another period of time and was again paid temporary total compensation from March 11, 1987 through April 29, 1987. His benefits were terminated, however, when he failed to keep two doctor appointments. Compensation was reinstated on May 27, 1987 and he was paid through June 25, 1987, when his benefits were again suspended for failure to keep a physical therapy appointment.

Following further therapy, on approximately July 1, 1987, Zimmerman began working for a new employer, Wescot Fiberglass Company. After working approximately one month with Wescot, Zimmerman was injured while grinding down the edges of a large fiberglass container. The boards on which he was sitting gave way and he rolled off, landing on his back. He experienced shooting sensations and pain in his lower back and quit work because of pain. He did not file a claim in connection with this accident. Additional temporary total disability benefits, however, were paid by the Workers' Compensation Fund from September 9, 1987 through January 29, 1988.

On January 6, 1988, a hearing was conducted before an administrative law judge (A.L.J.) on Zimmerman's claim for permanent disability benefits. The A.L.J. appointed a medical panel to review Zimmerman's case. The medical panel submitted its report to the A.L.J. on April 29, 1988. The report found as follows:

1. There is no medically demonstrable causal connection between the applicant's ongoing problems and the industrial accident of January 26, 1987.

2. All of the residual problems complained of by the applicant were caused by a pre-existing condition.[1]

3. We find no period of time after 1/1/88 during which the applicant has been temporarily or totally disabled as a result of the industrial injury.

4. We suggest a current permanent physical impairment of 10% because of the pain and x-ray findings at the sacroiliac joints, understanding that his Reiter's disease has a good chance of progressing in the future, and there seems to be no way of telling whether it is currently stabilized.

5. Assuming that his condition is stabilized, his total impairment is 10%.

6. No portion of the permanent physical impairment is attributable to the applicant's industrial injury.

7. The percentage of permanent physical impairment attributable to any cause is 10%.

8. We believe that the industrial injury aggravated the pre-existing condition, since we are unable to find any evidence of pain before the injury.

Following objections by Zimmerman, the A.L.J. resubmitted the case to the medical panel. A supplemental report of the medical panel, released on August 26, 1988, increased Zimmerman's physical impairment by another ten percent but attributed the increase to a pre-existing spinal stenosis.

On October 7, 1988, the A.L.J. entered findings of fact, which adopted the medical panel's findings, conclusions of law, and an order. The A.L.J. determined that the residual problems Zimmerman complained of were caused by his pre-existing conditions of Reiter's syndrome and spinal stenosis. Because she found that Zimmerman failed to demonstrate that his ongoing medical condition was related to his industrial accident, the A.L.J. denied permanent disability benefits.

On March 19, 1989, the Industrial Commission denied Zimmerman's motion for review. The Commission adopted the A.L.J.'s findings of fact and determined that the A.L.J. correctly adopted the medical panel finding that Zimmerman's condition was unrelated to his industrial accident.

## STANDARD OF REVIEW

Respondents contend that our review of the Commission's findings is limited to "whether the Commission's findings are 'arbitrary and capricious' or 'wholly without cause' or contrary to the 'one [inevitable] conclusion from the evidence' or without 'any substantial evidence' to support them." *Lancaster v. Gilbert Dev.*, 736 P.2d 237, 238 (Utah 1987) (quoting *Kaiser Steel Corp. v. Monfredi*, 631 P.2d 888, 890 (Utah 1981)). However, because this proceeding was commenced after the effective date of the Utah Administrative Procedures Act (UAPA), Utah Code Ann. § 63–46b–1 to –22 (1989), we review the Commission's decision under the standards set forth in that act. *Johnson v. Department of Employment Sec.*, 121 Utah Adv. Rep. 26, 27 (1989); *Grace Drilling Co. v. Board of Review*, 776 P.2d 63, 66 (Utah Ct.App.1989). Under the UAPA,[2] the

---

1. The pre-existing condition identified by the panel was Reiter's syndrome, which is a disease of uncertain cause, characterized by arthritis, conjunctivitis, and urethritis. Webster's Medical Desk Dictionary 611 (1986).

2. Utah Code Ann. § 63–46b–16(4) (1989) states:
   The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

   (a) the agency action, or the statute or rule on which the agency action is based, is unconstitutional on its face or as applied;
   (b) the agency has acted beyond the jurisdiction conferred by any statute;
   (c) the agency has not decided all of the issues requiring resolution;
   (d) the agency has erroneously interpreted or applied the law;
   (e) the agency has engaged in an unlawful procedure or decision-making process, or has failed to follow prescribed procedure;

Board's findings "will be affirmed only if they are 'supported by substantial evidence when viewed in light of the whole record before the court.' This 'substantial evidence test' grants appellate courts greater latitude in reviewing the record...." *Grace Drilling*, 776 P.2d at 67 (quoting Utah Code Ann. § 63–46b–16(4)(g) (1989)).

## AGGRAVATION OF PRE–EXISTING CONDITION

Zimmerman first claims that because the industrial accident aggravated his previous asymptomatic conditions, disability benefits should have been granted as required by Utah Code Ann. § 35–1–69 (Supp.1987) (repealed 1988).[3] Section 35–1–69 mandates apportionate compensation by the Workers' Compensation Fund and the Second Injury Fund for disability resulting from combination of a pre-existing condition and an industrial injury, as follows:

(1) If any employee who has previously incurred a permanent incapacity by accidental injury, disease, or congenital causes, sustains an industrial injury for which either compensation or medical care, or both, is provided by this chapter that results in permanent incapacity which is substantially greater than he would have incurred if he had not had the pre-existing incapacity, or which aggravates or is aggravated by such pre-existing incapacity, compensation, medical care, and other related items as outlined in Section 35–1–81, shall be awarded on the basis of the combined injuries, but the liability of the employer for such compensation, medical care, and other related times shall be for the industrial injury only. The remainder shall be paid out of the Second Injury Fund provided for in Subsection 35–1–68(1)....

For purposes of this section, (a) any aggravation of a pre-existing injury, disease, or congenital cause shall be deemed "substantially greater", and compensation, medical care, and other related items shall be awarded on the basis of the combined injuries as provided in this Subsection (1)....

Zimmerman contends that the Industrial Commission's determination that "[t]he medical panel found there was no aggravation of a pre-existing condition" contradicted the panel's finding that "the industrial injury aggravated the pre-existing conditions, since we are unable to find any evidence of pain before the injury." Zimmerman concludes that the Commission's disregard of clear evidence showing aggravation was a misapplication of law, and that we should, therefore, reverse.

Utah Code Ann. § 63–46b–16(4)(d) (1989) provides that relief shall be granted if an "agency has erroneously interpreted or *applied* the law." *Id.* (emphasis added). According to this court's previous interpretation of this section, "we will not disturb the Board's application of factual findings to the law unless its determination exceeds the bounds of reasonableness and rationality." *Pro–Benefit Staffing Inc. v. Board of Review*, 775 P.2d 439, 442 (Utah Ct.App. 1989). We do, however, accord less deference to the Commission's factual findings than under the pre-UAPA standard, upholding its factual findings if they are "supported by substantial evidence when viewed in light of the whole record before the court." *Grace Drilling Co.*, 776 P.2d at 67 (quoting Utah Code Ann. § 63–46b–16(4)(g) (1989)).

■ Zimmerman argues that the Commission erred in concluding that he was not

---

(f) the persons taking the agency action were illegally constituted as a decision-making body or were subject to disqualification;

(g) the agency action is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court;

(h) the agency action is:

(i) an abuse of the discretion delegated to the agency by statute;

(ii) contrary to a rule of the agency;

(iii) contrary to the agency's prior practice, unless the agency justifies the inconsistency by giving and reasons that demonstrate a fair and rational basis for the inconsistency; or

(iv) otherwise arbitrary or capricious.

3. Laws 1988, ch. 116 § 6 repealed section 35–1–69 (1987), and enacted Utah Code Ann. § 35–1–69 (1988), which was effective July 1, 1988.

entitled to permanent benefits from the facts as found by the medical panel, the A.L.J., and the Commission. We disagree and find that the Commission's conclusion denying permanent benefits did not exceed the bounds of reasonableness and rationality and is supported by substantial evidence. With respect to the term "aggravation," the Utah Supreme Court has found that compensation is required under section 35–1–69(1) "if the industrial injury results in a permanent impairment that is aggravated by or aggravates a pre-existing permanent impairment *to any degree ....*" *Second Injury Fund v. Streator Chevrolet,* 709 P.2d 1176, 1181 (Utah 1985) (emphasis in original). The record viewed in its entirety, demonstrates that the aggravation the medical panel referred to was that due solely to the temporary pain experienced by Zimmerman following the accident and not aggravation of or by the pre-existing conditions of spinal stenosis and Reiter's syndrome. No permanent impairment was found to have resulted from the industrial injury itself or in combination with the prior existing conditions. Because the industrial accident did not result in a permanent impairment, the Board correctly denied Zimmerman permanent benefits. We acknowledge that the medical panel's findings in this matter, as adopted by the A.L.J. and the Commission, are not as clear as could be desired, but our analysis and review of the record convince us that the panel determined that Zimmerman's impairment was solely because of pre-existing, though dormant, conditions. If there had been *any* aggravation, or if a combination of pre-industrial accident conditions and industrial accident injuries met the requisite statutory percentages of impairment, Zimmerman would have been entitled to compensation. *Id.* However, the Commission found otherwise, and its findings are supported by substantial evidence.

## TENTATIVE TOTAL DISABILITY

Zimmerman also argues that the Industrial Commission erred in refusing to address his request that they make a tentative finding of permanent total disability. Section 63–46b–16(4)(c) of UAPA allows for appellate review when "the agency has not decided all of the issues requiring resolution," resulting in substantial prejudice to the petitioner.

▮ The Workers' Compensation Act establishes a procedure by which a finding of permanent total disability may be determined. Utah Code Ann. § 35–1–67 (Supp. 1987) states in pertinent part:

A finding by the commission of permanent total disability shall in all cases be tentative ... If the employee has tentatively been found to be permanently and totally disabled, it shall be mandatory that the industrial commission of Utah refer the employee to the division of vocational rehabilitation under the state board of education for rehabilitation training....

The Utah Supreme Court has adopted the "odd lot doctrine," which allows the Commission to find permanent total disability when a relatively small percentage of impairment caused by an industrial accident is combined with other factors to render the claimant unable to obtain employment. *See Norton v. Industrial Comm'n,* 728 P.2d 1025, 1027 (Utah 1986); *Hardman v. Salt Lake City Fleet Management,* 725 P.2d 1323, 1326 (Utah 1986).

▮ Zimmerman cites *Hardman* for the proposition that the only requirement for a tentative finding of permanent disability is that the employee not be able to return to his or her former occupation. *Hardman* sets forth the following steps for qualification under the "odd lot" doctrine: (1) the employee must prove that he or she can no longer perform the duties required in his or her occupation; (2) the employee, having been referred to the Division of Vocational Rehabilitation by the Industrial Commission, must, through cooperation with the Division, establish that he or she cannot be rehabilitated; and (3) the burden then shifts to the employer to prove the existence of steady work the employee can perform, taking into account several factors, including the employee's education, mental capacity, and age. *Hardman,* 725 P.2d at

1326–27. *See also Peck v. Eimco Process Equip. Co.*, 748 P.2d 572, 575 (Utah 1987).

Zimmerman argues that the medical advice he received to avoid heavy lifting or heavy work and the medical panel's recommendation for re-education to "stave off unemployment" are undisputed evidence that Zimmerman is medically unable to return to his former occupation. Consequently, argues Zimmerman, the Commission erred in not referring him to Rehabilitation for further evaluation.

The Commission determined that because Zimmerman did not claim permanent total disability until after the hearing, there was no evidence on the record to justify sending Zimmerman to Rehabilitation for a complete evaluation. Zimmerman claims, however, that even though his request came after the hearing, the Commission still had five months to consider the request and should have done so.

█ We find, however, that notwithstanding the timeliness of Zimmerman's request, the Commission's conclusion that he had not suffered a compensable industrial injury precludes consideration of whether he qualifies for tentative permanent total disability. "[U]nless the claimant has suffered a compensible industrial injury, the [odd lot] doctrine is inapplicable no matter how compelling the other factors." *Ortiz v. Industrial Comm'n*, 766 P.2d 1092, 1094 (Utah Ct.App.1989). The medical panel's findings, adopted by the Commission, clearly show that Zimmerman failed to establish the necessary causation between his impairment and his industrial accident in order to support his claim to permanent disability benefits. *See Allen v. Industrial Comm'n of Utah*, 729 P.2d 15, 24–25 (Utah 1986); *Ortiz*, 766 P.2d at 1094; *Large v. Industrial Comm'n*, 758 P.2d 954, 956 (Utah Ct.App.1988). Since the Commission did not find compensable permanent disability, a rehabilitation evaluation was not necessary. *Ortiz*, 766 P.2d at 1095. Therefore, the Commission did not err in failing to determine the issue or to make a finding of tentative permanent disability, and Zimmerman suffered no prejudice thereby.

## QUALIFICATION OF MEDICAL PANEL

Zimmerman next claims that the medical panel was not properly qualified as required by statute. Qualifications of a medical panel in workers' compensation cases are set forth in Utah Code Ann. § 35–2–56(2) (1988). The statute states in pertinent part:

> Where a claim for compensation based upon partial permanent disability due to an occupational disease or industrial injury is filed with the commission, the commission shall appoint an impartial medical panel to consist of one or more physicians specializing in the treatment of the disease or condition involved in the claim, and such medical panel shall make such study, take such X-rays and perform such tests as the panel may determine and certify to the commission the extent, if any, of the permanent disability of the claimant. . . .

Zimmerman claims that the Industrial Commission's failure to appoint a rheumatologist who specializes in Reiter's disease to the medical panel was a substantial error. We disagree.

When the panel was appointed, the initial diagnosis and treatment focused on Zimmerman's complaints of back and hip pain. Consequently, the panel properly included Dr. Leonard Jarcho, a neurologist, and Dr. Geoffery Orme, an orthopedic surgeon. Zimmerman's pre-existing Reiter's syndrome was unknown until he was seen by Dr. Charles Rich and referred to Dr. Christopher Jackson, a specialist in rheumatology.

█ We find that Zimmerman was not substantially prejudiced by the Industrial Commission's composition. The panel reviewed all medical records and diagnostic studies. Dr. Jarcho also took the extra precaution of reviewing the X-ray studies with a specialist on bone radiology and a specialist in rheumatology at the University Medical Center. Zimmerman's claim that Dr. Jackson's findings contradict the panel's findings is unsupported. Zimmer-

man quotes isolated excerpts from Dr. Jackson's notes to support the notion that Dr. Jackson believed Zimmerman's Reiter's disease was minor and the symptoms were due to the protruding disc in the congenitally narrow spinal canal. Review of Dr. Jackson's entire report indicates his agreement with the panel's findings.

## MEDICAL PANEL'S
## CREDIBILITY JUDGMENT

■ Lastly, Zimmerman claims that the Industrial Commission improperly adopted the medical panel's opinions relative to his credibility. In its report, the panel questioned Zimmerman's reliability and motivation. However, the panel's assessment of Zimmerman's credibility only went to judging whether he was capable of accurately relating to the panel the symptoms he suffered and was not, as Zimmerman contends, the basis of their report. We find, therefore, no error in the Commission's adoption of the panel's findings, including the limited assessment of Zimmerman's credibility.

We affirm.

GARFF and BILLINGS, JJ., concur.