Kenneth L. VIRGIN, Petitioner,

v.

BOARD OF REVIEW OF the INDUSTRIAL COMMISSION OF UTAH, Stateline Chevron, Workers' Compensation Fund, and Employers' Reinsurance Fund, Respondents.

No. 900167–CA.

Court of Appeals of Utah.

Dec. 18, 1990.

---

James E. Harward, Director, Salt Lake City, for Div. of Legal Affairs, Industrial Com'n of Utah.

Before BENCH, BILLINGS and GREENWOOD, JJ.

OPINION

BILLINGS, Judge:

Kenneth L. Virgin ("Virgin") seeks review of the Industrial Commission's ("Commission") order denying his claim for workers' compensation benefits. The Commission concluded there was not a causal connection between Virgin's industrial injury and his subsequent hip replacement surgery and thus denied disability benefits. We affirm.

On June 15, 1986, Virgin was injured on the job when an automobile engine on which he was working, snapped a supporting chain and hit Virgin in the area of his left hip and knocked him down. Virgin did not seek medical attention until three days later when he was examined by a physician's assistant who found bruising and tenderness in the left hip area, but no fractures. Virgin reported the industrial accident immediately, but made no claim for compensation at that time and did not miss any work as a result of this industrial accident.

Virgin claimed to have trouble with his left hip two to three months after the accident. Virgin did not seek further medical treatment, however, until nearly fourteen months after the industrial accident, when he was seen in the emergency room of a local hospital. Virgin was then referred to an orthopedic surgeon who examined him in September 1987. The orthopedic surgeon concluded Virgin had severe aseptic necrosis of the left hip and aseptic necrosis to a lesser degree of the right hip "probably on the basis of alcoholism," and recommended a total hip replacement when symptoms warranted, but suggested Virgin wait as long as possible.

LeRoy K. Johnson (argued), Salt Lake City, for petitioner.

Richard Sumsion, Mark Dean (argued), Salt Lake City, for Workers' Comp. Fund of Utah.

Erie V. Boorman, Administrator (argued), Salt Lake City, for Employers' Reinsurance Fund.

In February 1988, Virgin was examined by another orthopedic surgeon. Virgin had a left total hip replacement on May 25, 1988 and returned to work on June 15, 1988. He claimed he was entitled to medical expenses, temporary total disability and permanent partial disability as a result of his surgery, claiming his hip replacement surgery was caused in part by his 1986 industrial accident. Virgin requested a hearing to review his entitlement to compensation. After the initial hearing, the administrative law judge ("A.L.J.") appointed a medical panel consisting of one orthopedic surgeon, Dr. Craig McQueen. Dr. McQueen examined Virgin and thereafter prepared and submitted the following medical findings.

> [T]he patient did suffer an injury to his hip during the June 15, 1986 accident which aggravated his pre-existing avascular necrosis. So I do not feel that his May 25, 1988 surgery was necessitated by the industrial accident. I think perhaps it happened sooner than it would have had he not had an injury, but I feel he would have ultimately had needed surgery on this inspite of any industrial injury.... I do not feel that the disability following his surgery was due to the industrial accident.... Since I do not feel that he had an industrial injury that caused his hip problems, I do not think he had any permanent physical impairment directly caused by the industrial accident. The percentage of permanent physical impairment directly attributable to the pre-existing conditions would be approximately a 40% permanent partial impairment of the left hip. He would have the same on the right hip, but these would be pre-existing. I do agree that the industrial accident ... did aggravate his pre-existing condition, but was not causally related to his avascular necrosis.

At a subsequent hearing, both parties examined Dr. McQueen in an attempt to clarify whether Virgin's earlier industrial accident was causally related to his hip replacement surgery. Dr. McQueen maintained his position that all of Virgin's ratable impairment was caused by his pre-existing avascular necrosis. He did testify that the industrial injury may have necessitated surgery sooner, but he was unable to speculate as to how much sooner. At the hearing, the A.L.J. questioned Dr. McQueen about the 40% permanent partial impairment he had assigned to Virgin. The A.L.J. asked whether it could be "reasonable to reach the conclusion that of that 40%, 5% was caused by the industrial contribution?" Dr. McQueen responded that this "might be reasonable, because that's a small amount of what his total disability is, because certainly, in my initial opinion, the whole major cause for his problem is the avascular necrosis and I think there is no question about that. I think there is a small contribution from his industrial injury." In answer to a subsequent question however, Dr. McQueen reiterated his opinion that all of Virgin's ratable impairment was due to the pre-existing avascular necrosis.

Based on the testimony of the medical panel, the A.L.J. found the industrial accident directly and permanently aggravated Virgin's pre-existing avascular necrosis and thus had a causal relationship to his hip replacement, and awarded Virgin medical expenses associated with the hip replacement and temporary total and permanent partial workers' compensation benefits.

The Commission reviewed the case, concluded Virgin was not entitled to benefits and revoked the A.L.J.'s order and findings. The Commission found:

> The Medical Panel report dated January 29, 1989, stated that while the industrial accident may have aggravated Applicant's pre-existing asymptomatic avascular necrosis, it was not causally related. It further stated that no permanent physical impairment was directly caused by the industrial accident and that the period of disability following the surgery was not due to the industrial accident....

> Because the Commission finds that no industrial benefits are due on account of

Applicant's injury, the Commission hereby adopts the report of the Medical Panel that Applicant's entire ratable impairment pre-existed the industrial accident of June 15, 1986, and that the accident did not contribute to Applicant's impairment.

## STANDARD OF REVIEW

■ At the outset, it is important to note that the Commission, not the A.L.J., is the ultimate finder of fact. *U.S. Steel Corp. v. Industrial Comm'n*, 607 P.2d 807, 811 (Utah 1980); *see* Utah Code Ann. § 63-46b-12(6)(c) (1989). Medical causation, including whether an industrial accident aggravated a pre-existing condition, is a factual matter.[1] Proceedings in this case were commenced after January 1, 1988, thus the Utah Administrative Procedure Act ("UAPA") controls. Utah Code Ann. §§ 63-46b-1 to -22 (1989). This court clearly articulated the standard for reviewing factual findings under the UAPA in *Grace Drilling Co. v. Board of Review*, 776 P.2d 63 (Utah Ct.App.1989). "[I]t is clear that the Board's findings of fact will be affirmed only if they are 'supported by substantial evidence when viewed in light of the whole record before the court.'" *Id.* at 67. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The party challenging the Commission's findings of fact "must marshall all of the evidence supporting the findings and show that despite the supporting facts, and in light of the conflicting or contradictory evidence, the findings are not supported by substantial evidence." *Id.* at 68. In *Grace Drilling*, this court also noted that in applying the substantial evidence test when reviewing findings of fact, the court should not substitute its own judgment as between two reasonably conflicting views, even though it may have come to a different conclusion. "It is the province of the Board, not appellate courts, to resolve conflicting evidence, and where inconsistent inferences can be drawn from the same evidence, it is for the Board to draw the inferences." *Id.*

## MEDICAL CAUSATION

The Commission concedes that Virgin suffered an industrial accident when he was struck by the swinging engine while at work. Thus, legal causation is not at issue.[2] Rather, this case centers on whether Virgin's industrial accident was the medical cause of his hip replacement surgery and subsequent disability.[3]

Virgin argues that because the medical panel stated his 1986 industrial injury *aggravated* his pre-existing avascular necrosis and may have necessitated surgery sooner, his hip replacement should be compensable, regardless of the fact that the doctor was unable to clearly assign any degree of permanent or temporary impairment to his 1986 industrial accident. The Commission contends there was no medical

---

1. *See, e.g., Anderson v. Dominic Elec.*, 660 P.2d 241, 242 (Utah 1983) (whether industrial accident aggravated pre-existing injury is factual matter best left to Commission); *Frenchik v. Industrial Comm'n*, 22 Utah 2d 123, 449 P.2d 649, 650 (1969) (Commission's factual findings that medical panel unable to relate present difficulty to industrial injury conclusive); *Large v. Industrial Comm'n*, 758 P.2d 954, 957 (Utah Ct. App.1988) (factual finding that industrial injury was not medical cause of claimant's permanent disability upheld).

2. In *Allen v. Industrial Comm'n*, 729 P.2d 15, 18 (Utah 1986), the Utah Supreme Court held that a claimant must prove both "legal" and "medical" causation in order to recover workers' compen-

sation benefits. "Under the legal test, the law must define what kind of exertion satisfies the test of 'arising out of the employment' ... [then] the doctors must say whether the exertion (having been held legally sufficient to support compensation) in fact caused this [injury]." *Id.* at 25 (quoting Larson, *Workmen's Compensation* § 38.83(a), at 7-276 to 277).

3. In this case, it is important to note that Virgin did not claim any temporary disability immediately following the accident, but instead made claims only for the temporary and permanent disability associated with the hip replacement.

causation because the "aggravating" industrial injury did not result in a medically measurable permanent impairment. The Commission claims there can be no liability where as a result of an industrial accident, a worker suffers only temporary aggravation or pain or a nonratable, speculative acceleration of symptoms of a pre-existing condition.

Virgin has the burden to prove a causal connection between his 1986 industrial injury and his subsequent hip surgery and disability by a preponderance of the evidence. *See Ortiz v. Industrial Comm'n,* 766 P.2d 1092, 1095 (Utah Ct.App.1989); *Large v. Industrial Comm'n,* 758 P.2d 954, 956 (Utah Ct.App.1988) (citing *Allen v. Industrial Comm'n,* 729 P.2d 15 (Utah 1986)). If Virgin cannot demonstrate this link, he cannot recover. *Allen,* 729 P.2d at 27.

■ Generally, industrial injuries that aggravate or "light up" pre-existing condi-

tions and are causally connected to the subsequent onset of symptoms of the disease or condition, are compensable. *Id.* at 25 (citing *Powers v. Industrial Comm'n,* 19 Utah 2d 140, 143–44, 427 P.2d 740, 743 (Utah 1967)). However, a claimant must prove the subsequent disability is "medically the result of an exertion or injury that occurred during a work-related activity," *id.* at 27, and not solely the result of a pre-existing condition.[4]

Recently, this court addressed a similar pre-existing condition-medical causation issue in *Zimmerman v. Industrial Comm'n,* 785 P.2d 1127 (Utah Ct.App. 1989). In *Zimmerman,* the applicant claimed an industrial injury to his back aggravated his previously asymptomatic Reiter's syndrome and spinal stenosis, and thus he should have been granted benefits for the pre-existing disease under Utah Code Ann. § 35–1–69,[5] much as Virgin claims in this case. The medical panel in

---

4. Utah's appellate courts have denied benefits in each of the following cases as the court found the disability was solely the result of a pre-existing condition. In *Lancaster v. Gilbert Dev.,* 736 P.2d 237 (Utah 1987), the Utah Supreme Court upheld the Commission's denial of benefits for aggravation of a pre-existing condition where the medical evidence was conflicting and inconclusive. The court in *Lancaster* noted that "although the medical evidence was conflicting, it is the responsibility of the administrative law judge to resolve factual conflicts." *Id.* at 241. In *Olsen v. Industrial Comm'n,* 776 P.2d 937, 939 (Utah Ct.App.1989) *aff'd,* 797 P.2d 1098 (Utah 1990), this court upheld denial of benefits where the Commission discounted opinions of claimant's experts and adopted the opinion of the medical panel that disability was due entirely to a pre-existing condition. In *Large v. Industrial Comm'n,* 758 P.2d 954 (Utah Ct.App.1988), this court upheld the Commission's denial of benefits where there was "substantial evidence in the record to support a finding that the 1985 injury was not the medical cause of [claimant's] permanent total disability," as claimant's disability resulted from pre-existing conditions. *Id.* at 957.

5. Utah Code Ann. § 35–1–69(1) (1986), as in effect at the time the events in this case occurred, generally provides for apportionment of liability for disability benefits where an industrial accident aggravates a pre-existing disease. The statute sets out a procedure for apportionment of compensation between the employer or

its insurance carrier and the Second Injury Fund. The statute specifically provides:

(1) If any employee who has previously incurred a permanent incapacity by incidental injury, disease, or congenital causes, sustained an industrial injury for which either compensation or medical care, or both, is provided by this chapter that results in permanent incapacity which is substantially greater than he would have incurred if he had not had the pre-existing incapacity, or which aggravates or is aggravated by such pre-existing incapacity, as outlined in Section 35–1–81, shall be awarded on the basis of the combined injuries, but the liability of the employer for such compensation, medical care, and other related items shall be for the industrial injury only. The remainder shall be paid out of the Second Injury Fund....

In 1988, section 35–1–69 was repealed and a new section 35–1–69 was reenacted. Under the current version, the test for apportioning liability for compensation requires at least a ten percent pre-existing whole person permanent impairment with additional impairment caused by accident from employment resulting in permanent total disability before liability for compensation is apportioned.

This court has noted that the statute itself does not entitle anyone to benefits for aggravation of a pre-existing injury. "Entitlement to benefits is a prerequisite to consideration of apportionment. Where the disability is the result of pre-existing conditions and not an industrial accident, a claimant is not entitled to disability benefits." *Large,* 758 P.2d at 957.

*Zimmerman* stated: "The industrial injury *aggravated* the pre-existing condition since we are unable to find any evidence of pain before the industrial injury." *Zimmerman*, 785 P.2d at 1129 (emphasis added).

Nevertheless, the medical panel concluded that all of Zimmerman's residual back problems were caused by his pre-existing conditions. Based upon the medical evidence in *Zimmerman*, this court acknowledged that compensation must be awarded "if the industrial injury results in a permanent impairment that is aggravated by or aggravates a pre-existing permanent impairment to any degree." *Id.* at 1131 (quoting *Second Injury Fund v. Streator Chevrolet*, 709 P.2d 1176, 1181 (Utah 1985)). However, we denied recovery in *Zimmerman* because we found the medical panel report as a whole indicated the "aggravation" referred to was due solely to temporary pain. We stated: "No permanent impairment was found to have resulted from the industrial injury itself or in combination with the prior existing conditions. Because the industrial accident did not result in a permanent impairment, the Board correctly denied benefits." *Id.*

■ Virgin relies heavily on the "aggravation to any degree" language in *Zimmerman* to support his claim for benefits. However, this language does not refer to temporary aggravation or nonratable acceleration of symptoms, but to a ratable permanent aggravation of a pre-existing condition.[6]

■ In this case, the medical panel report indicated that while the industrial injury "aggravated his pre-existing avascular necrosis," Virgin's left hip surgery and subsequent temporary and 40% permanent disability were not caused by the industrial injury. In its report, the medical panel

speculated that *perhaps* the surgery happened sooner than it would have without the industrial accident, but could not quantify the time. The panel also speculated as a result of the A.L.J.'s questions, that it "might be reasonable" to assign 5% of Virgin's disability to his industrial accident, but later the panel clearly rejected any allocation to the industrial accident. The medical panel stated that ultimately, Virgin would have needed the surgery in any event.

Although Dr. McQueen's testimony is confusing at times, ultimately, the doctor firmly states that the sole cause of Virgin's disability and consequent surgery was his pre-existing avascular necrosis.

The Commission entered specific findings regarding medical causation stating that, "[B]ecause the Commission finds that no industrial benefits are due on account of Applicant's injury, the Commission hereby adopts the report of the Medical Panel that Applicant's entire ratable impairment pre-existed the industrial accident of June 15, 1986, and that the accident did not contribute to Applicant's impairment."

As we have previously recognized, the Commission is the ultimate fact finder in workers' compensation cases. As the fact finder, the Commission may choose to give certain evidence more weight than other evidence. *See Mollerup Van Lines v. Adams*, 16 Utah 2d 235, 398 P.2d 882 (1965). In *Mollerup*, the court noted that "[i]t was both the duty and the prerogative of the Commission to view [the doctor's] entire testimony together and it could believe those statements which impressed it as being true, even though there may have been some seeming contradictions in other parts of his testimony." 398 P.2d at 885 (citations omitted).

More recently, this court has held that the Commission will not be reversed simply

---

6. When the medical panel cannot assign a measurable percentage of responsibility to the industrial injury, it would seem absurd to conclude that the Second Injury Fund must assume complete responsibility for a disability caused solely by a pre-existing condition. The purpose of section 35–1–69 is to apportion liability only

where an industrial injury measurably contributes to a permanent disability caused in part by a pre-existing condition, not to simply impose liability on the Second Injury Fund (now Employer's Reinsurance Fund) anytime a worker's disability is caused by a pre-existing condition.

because it has chosen to rely on one portion of a medical panel report and to reject other inconsistent portions. *See USX Corp. v. Industrial Commission*, 781 P.2d 883, 887 (Utah Ct.App.1989).

We conclude there is substantial evidence in the medical panel report to support the Commission's finding that "the applicant's entire ratable impairment pre-existed the industrial accident of June 15, 1986, and that the accident did not contribute to the applicant's impairment." Therefore, we affirm the Commission's order denying Virgin benefits.

GREENWOOD, J., concurs.

BENCH, J., concurs in the result.